## 49728. AARON RENTS, INC. v. CORR.

STOLZ, Judge.

Aaron Rents, Inc., brought a declaratory judgment action against Robert H. Corr (defendant). The litigation arose out of the following factual situation.

In the period from July 1, 1962, through March 31, 1967, the defendant purchased certain shares of stock in a corporation known as Aaron Rents Furniture, Inc. (Furniture, Inc.) The majority stockholder in this

corporation was another corporation known as Aaron Rents, Inc. (Rents, Inc.), of which all capital stock was owned by R. C. Loudermilk, its president. On February 22, 1967, a special meeting of the stockholders in Furniture, Inc. was held to consider a merger with Rents, Inc. A quorum was present, including seven of the eleven minority stockholders, the defendant, and the president of the majority stockholder, Rents, Inc. Only the defendant voted against the resolution tentatively approving the merger. On March 15, 1967, at a special, duly called meeting of the Board of Directors of Furniture, Inc., the agreement of merger was duly approved and it was unanimously recommended to the stockholders of Furniture, Inc. that the merger agreement be adopted. On March 29, 1967, a special duly called meeting of Furniture, Inc.'s stockholders was held to consider the merger agreement. A quorum was present. All stockholders present, in person or by proxy, voted in favor of the merger except the defendant, who voted against it and objected thereto in writing pursuant to *former* Code Ann. § 22-1845 (Ga. L. 1937-38, Ex. Sess., pp. 214, 233). In his written objection, as contained in a letter to the officers and directors of both corporations, dated March 29, 1967, the defendant stated that he could not vote in favor of the merger under the present terms, that he did not believe the percentage of stock ownership under the merger agreement in the merged corporation was acceptable, that he wanted to examine the new audit figures of both companies then being prepared, and "If after this the true audit figures show that the percentage offered . . . is more in perspective, I would like to have the right to accept the terms and leave my stock in force. If not, I would like for the company to buy my shares of stock at true market value."

On March 31, 1967, the merger agreement was approved in the Superior Court of Fulton County with the result that Rents, Inc. became a part of Furniture, Inc. as the resulting corporation, with the name thereof being changed from Aaron Rents Furniture, Inc. to Aaron Rents, Inc. The resulting corporation is hereinafter referred to simply as the plaintiff.

On April 20, 1967, the defendant wrote the plaintiff:

"Demand is hereby made upon Aaron Rents Furniture, Inc. that payment be made to me, Robert Corr, stockholder in said corporation, of the fair cash value of the stock which I hold in Aaron Rents Furniture, Inc.

"As I previously advised, I was opposed to the merger of Aaron Rents, Inc. and Aaron Rents Furniture, Inc. since I do not feel that the proration of the value of the stock issued as a result of the merger was equitable.

"I will be happy to confer with you with reference to the payment to me of the fair cash value of the stock which I hold."

On April 29, 1967, the plaintiff's corporate secretary wrote the defendant that: "Your letter of April 20, 1967, was received in my office on April 21, 1967, twenty-three days after the taking of the vote of the stockholders of Aaron Rents Furniture, Inc. approving the merger agreement which had previously been executed by its directors and by the directors of Aaron Rents, Inc.

"While reserving the rights of Aaron Rents Furniture, Inc. by reason of the foregoing, I am writing to advise you that it is prepared to pay you $3 per share for each of the shares of stock you held in Aaron Rents Furniture, Inc. which was the fair cash value of each such share on March 31, 1967, prior to the merger. Payment will be made in cash or by cashier's check on May 1, 1967, or at any time thereafter you may request the payment.

"Since I will be out of town all of next week, as I have for most of this past week, you or your attorney Mr. Corbett Peek should telephone either Mr. Tom Grimes, the comptroller of Aaron Rents, Inc., or my associate, Mr. William A. Burnham, to indicate when and where you desire the offered payment. Both of these gentlemen will be informed of this letter and will be prepared to make arrangements for delivery of the total funds in question."

The plaintiff's corporate secretary testified that, prior to writing the aforesaid letter, he had not noticed that the letter of April 20, 1967 was two days late, and then did not have time to confer with any other company officials, but that "shortly after this, the company took the position that it would not try to take advantage of the two-day technicality" and would treat the letter as if it had been written on time.

On May 18, 1967, a meeting was held between the plaintiff's corporate secretary, the defendant and one of the defendant's attorneys, at which the sole topic of conversation was money, the defendant then being unwilling to accept the price set in the plaintiff's letter of April 29, 1967. No conclusions were reached, except that the defendant did understand that he could have gotten the $45,924 if he wanted it.

On June 7, 1967, the plaintiff's corporate secretary (and attorney) wrote the defendant's attorney: "From meeting with Bill Whaley and Bob Corr, I understood that the $3.00 per share figure was not acceptable, but that we would shortly be informed as to a per share figure which would be acceptable. Since I have heard nothing further, I am writing to ask you to 'phone me with a figure as soon as possible.'

"If I am incorrect in my understanding that we will be given a figure at an early date, please phone me."

On June 22, 1967, attorneys for the parties met and agreed to defer a decision as to the value of the defendant's stock until after Furniture, Inc.'s financial statements for the year ending March 31, 1967 were available. The attorneys then agreed that, if the parties could not agree, they would submit the matter to binding arbitration.

The financial statements were delayed due to the problems within the accounting firm doing the audit. On August 22, 1967, the defendant's attorney wrote the plaintiff's corporate secretary (and attorney) that after he received the financial statements he would advise "promptly either as to the per share figure which [the defendant] would be willing to accept for his stock or advise that Bob would be willing to accept his pro rata share of the stock in the corporation resulting from the merger."

On August 23, 1967, the plaintiff's corporate secretary (and attorney) responded, "After you are furnished with a copy of the audit report, if we are unable to agree on a per share figure, the out of court arbitration which you suggested should be scheduled at an early date." The defendant's counsel did not respond to this correspondence.

On September 28, 1967, the plaintiff's corporate secretary (and attorney) gave the defendant and his counsel copies of the financial statements and a draft of a proposed arbitration agreement for use in the event the parties were unable to agree on the value of the stock. The meeting ended inconclusively with an understanding that the defendant "would study the reports and let them know."

On October 13, 1967, the plaintiff's corporate secretary (and attorney) wrote the defendant's counsel, stating that the defendant had ceased to be a stockholder in the corporation by reason of his demand letter of April 20, 1967, and insisted that the defendant make up his mind regarding the $45,924 stock purchase price, and if such was not acceptable, that he commence arbitration of the question of fair value of the stock as soon as possible, in any event within 30 days of October 28, 1967. Between that date and January 11, 1968, counsel for the parties had several casual discussions of the problem, their recollections of which conflict. However, the fact that nothing substantive was agreed upon, is not contested.

On January 11, 1968, the plaintiff's corporate secretary (and counsel) wrote defendant's counsel: "Please refer to my letters of October 13, 1967 and October 26, 1967. A few days before Thanksgiving, when we happened to run into each other in the parking garage, you told me Bob Corr still had not made a final decision, but that we would have an answer before the Thanksgiving holidays. That was our last word from you until a few days ago when I saw you on the street and you asked me with a smile when the stock certificates in the corporation resulting from the merger would be issued. I told you then, as I had several times in October and earlier, that no stock would be issued, because under the law of Georgia, Bob Corr ceased to be a stockholder on April 20, 1967 when for the second time he formally refused to participate in the merger and demanded payment for the value of his shares. See Georgia Code § 22-1848.

"The purpose of this letter is to reaffirm the absolute, unconditional and continuing tender of payment which was made on April 29, 1967. Whenever

there is a response to the request then made for instructions as to whether the $3 per share ($45,925) [sic] should be paid in cash or by cashier's check and as to the time and place of delivery, Aaron Rents, Inc. will be ready, willing and able to comply. The sums tendered represent the fair value of Bob's stock as of March 31, 1967 and a return to him of more than double his investment after less than five years.

"Pending receipt of instructions as to the form of payment, Aaron Rents, Inc.'s position will continue to be that it has no further obligation or responsibility to Dr. Corr. He is a creditor to whom $45,924 is owed. The period in which he might have sought to recover a larger sum by initiating an arbitration upon the question of fair value expired under the merger statute before the end of May, and under our proposed agreement, near the end of October. All that remains is for him to pick up his money.

"We regret the course of these developments, but Aaron Rents, Inc. is actually left with no choice considering the law, the nine months of delay and the uncertainty, caused by Bob's continuing inaction. Certainly, our Board of Directors could not voluntarily accede to your demand for the issuance of stock without wrongfully and illegally affecting the relative interests and rights of the remaining stockholders in and to the equity of the corporation which has changed since last spring as a result of business operations in which Bob chose to take no risk.

"Please explain this to Bob, as I have asked you to do, because the decision is one which he made back in April and in our considered view the corporation is bound to follow it. Certainly, there is no need for hard feelings."

No arbitration was ever commenced. On March 11, 1968, the plaintiff filed its petition for declaratory judgment and paid $45,924 into the registry of the court. The matter came on for trial and was submitted to the jury on written interrogatories, with the jury deciding "that defendant did not cease to be a stockholder in plaintiff corporation and [was] entitled to have his pro rata share of the stock issued to him." The plaintiff appeals, enumerating as error the denial of its motion for

directed verdict, motion for judgment n.o.v. or, in the alternative, its motion for new trial. *Held:*

*Former* Code Ann. § 22-1845, supra, provides: "Stockholder opposing merger.—If any stockholder entitled to vote in either corporation, consolidating or merging, as aforesaid, shall vote against the same and shall at or prior to the taking of the vote object thereto in writing, or if any stockholder of record in either corporation, consolidating or merging, as aforesaid, but not entitled to vote thereon, shall at or prior to the taking of the vote object thereto in writing, and if in either case such stockholder within 20 days after the taking of such vote demand in writing of the corporation in which he holds stock that payment be made to him of the fair cash value of his stock, such corporation shall within 30 days after the date of the order of the superior court or the judge thereof, as aforesaid, pay to him the fair cash value of his stock, unless said merger or consolidation is abandoned."

Thus it appears that there are three requirements for a stockholder to invoke the benefits of the statute: (1) Vote against the merger; (2) At or prior to the taking of the vote on the merger, object thereto in writing; (3) Within 20 days after taking of such vote, demand in writing of the corporation in which he holds stock for payment of the fair cash value of his stock.

There is no question that the defendant voted against the merger. Thus, Item (1), supra, is conclusively met.

There is no question that the defendant did submit his letter of March 29, 1967, supra, and that the same constituted a written objection to the merger.

There is no question that the defendant demanded in writing payment of the fair cash value of his stock, and that he did not make this demand within the twenty days allowed by the statute. Thus, the issue before us is whether, under the facts presented above, this lack of timeliness in making the demand, could be waived by the plaintiff and in fact was waived as a matter of law.

"Waiver is a voluntary relinquishment of some known right, benefit, or advantage, which, except for such waiver, the party otherwise would have enjoyed."

*Kennedy v. Manry,* 6 Ga. App. 816, 819 (66 SE 29) and cits.

"Laws made for the preservation of public order or good morals cannot be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." Code § 102-106.

As a general premise, waiver need not be supported by consideration, is unilateral in character, must be made with knowledge and intent, and can be established by a certain course of conduct. 92 CJS 1041-1069, Waiver; 56 AmJur 99-126, Waiver. See also *New York Underwriters Ins. Co. v. Noles,* 101 Ga. App. 922 (115 SE2d 474) and cits.

"[O]nce the incidental right or contractual benefit has been waived or relinquished, it cannot be reclaimed." *New York Underwriters Ins. Co. v. Noles,* supra, p. 925, and cits.

We have dealt at some length with the factual situation involved in this case. The record of considerably greater length shows beyond question that the parties embarked upon a course of action following the defendant's demand letter of April 20, 1967, on which the defendant demanded payment for the true cash value of his stock and the plaintiff continuously offered to pay the defendant $3 per share for his stock. From April 20, 1967 until at least October 13, 1967, the only disagreement between the parties was the value to be paid the defendant for his stock. The defendant testified that, after receipt of the plaintiff's letter of April 29, 1967, he knew he could have gotten the money ($45,924) if he wanted it (T., 346), thus acknowledging his awareness of the plaintiff's waiver of the 20-day time period prescribed by *former* Code Ann. § 22-1845, supra. As previously stated, waiver is unilateral in character. It requires no assent from the opposite party. If such were required, we would be compelled to hold that, under the facts presented, the requisite consent existed, for (1) the defendant never withdrew his demand letter of April 20, 1967; (2) from that date until at least October 13, 1967, the negotiations between the parties involved *the amount of money to be paid the defendant for his stock.* While the defendant ultimately retreated from his position of April

20, 1967, there is absolutely nothing in the record which indicates that the plaintiff sought to invoke the 20-day requirement of *former* Code Ann. § 22-1845, supra, which it had waived by its conduct.

The defendant did not act to have the disagreement as to the value of the stock arbitrated pursuant to *former* Code Ann. § 22-1846 (Ga. L. 1937-38, Ex. Sess., pp. 214, 234) or within 30 days of the plaintiff's corporate secretary's (and counsel's) letter of October 13, 1967, which would have extended the time for such.

"Upon any stockholder's making demand in writing as aforesaid [*former* Code Ann. § 22-1845] for the value of his stock, such stockholder shall cease to be a stockholder in the corporation in which he held a stock and shall have no rights with respect to such stock except the right to receive payment therefor, as aforesaid . . ." *Former* Code Ann. § 22-1848 (Ga. L. 1937-38, Ex. Sess., pp. 214, 235). Thus, at least 30 days after October 13, 1967, the defendant was simply a creditor of the plaintiff in the amount of $45,924, which represents the fair cash value of the defendant's stock on the date of the merger.

The trial judge erred in failing to grant the plaintiff's motion for directed verdict and its motion for judgment notwithstanding the verdict.

*Judgment reversed. Eberhardt, P. J., and Deen, J., concur.*

SUBMITTED SEPTEMBER 30, 1974 — DECIDED OCTOBER 23, 1974 — REHEARING DENIED NOVEMBER 8, 1974 — ■

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Barry Phillips, Jesse B. Swann,* for appellant.

*Peek, Arnold, Whaley & Cate, J. Corbett Peek, Jr.,* for appellee.