S94G0646. MOBLEY et al. v. COMMONWEALTH MORTGAGE ASSURANCE COMPANY.

(450 SE2d 205)

SEARS, Justice.

In order to purchase real property, the appellants borrowed $59,000. As required by their lender, the appellants obtained private mortgage insurance from the appellee, Commonwealth Mortgage Assurance Company (Commonwealth). The insurance policy provided that in the event of default, Commonwealth would pay the lender 30 percent of the appellants' outstanding debt at the time of default, irrespective of any amount bid at a foreclosure sale. As a condition of issuing the insurance policy, Commonwealth required that the appellants execute an indemnity agreement, indemnifying Commonwealth for any sum Commonwealth had to pay the lender under the insurance policy.

The appellants subsequently defaulted, owing between $60,000 and $65,000 in principal and interest. The lender foreclosed, and purchased the property pursuant to its own bid of $62,920. The foreclo-

sure sale was not confirmed. After adjusting the lender's claim under the insurance policy to account for fees and expenses, Commonwealth paid the lender $19,303, then demanded that same amount from the appellants under the indemnity agreement. When the appellants refused to pay, this action by Commonwealth ensued. The appellants claim that the private mortgage insurance policy with collateral indemnity agreement in this case violates the public policy of this state as expressed by OCGA § 44-14-161, the confirmation-of-sale statute. The appellants filed a third-party complaint against the lender for equitable subrogation, and claiming that the lender was unjustly enriched by obtaining both the property and the $19,303.

The trial court granted summary judgment to Commonwealth, and denied the appellants' motion for summary judgment on the third-party claims. The Court of Appeals affirmed *Sifford v. Commonwealth Mtg.*, 211 Ga. App. XXXI (1994), stating in its unpublished opinion only that the appeal is controlled by *Turner v. Commonwealth Mtg.*, 207 Ga. App. 428 (428 SE2d 398) (1993), a case which involved the same defendant and virtually the same relevant facts as this case.

In *Turner*, the Court of Appeals considered whether

Commonwealth's action to recover under the loan indemnity agreement was tantamount to an action for a deficiency judgment, and thus should be barred because of the failure to confirm the foreclosure sale in accordance with OCGA § 44-14-161.

*Turner*, 207 Ga. App. at 429.

In concluding that Commonwealth's action did not violate the statute or the public policy advanced by the statute, the Court of Appeals recognized that § 44-14-161

would bar any action by the actual lender to obtain a deficiency judgment. However, Commonwealth was not the lender, and the recovery it sought was not a deficiency. Rather, it was a debt having a completely independent contractual basis . . . [in a contract] voluntarily entered and agreed upon by the appellants in exchange for Commonwealth's issuance of the mortgage insurance policy to the lender. Allowing Commonwealth to hold appellants to their bargain in the loan indemnity agreement in no way vitiates the protection the appellants enjoy from the lender seeking a deficiency judgment.

Id. at 429-430.

We agree with the Court of Appeals' decision that Commonwealth's actions do not violate the confirmation-of-sale statute. As in

*Turner*, there is no evidence in this case of any "side dealings between the lender and the guarantor [which] constituted a deliberate subterfuge of the confirmation statute," *Turner*, 207 Ga. App. at 430, and which would bring this case within the rule of *Redman Indus. v. Tower Properties*, 517 FSupp. 144 (N.D. Ga. 1981). Furthermore, as the Court of Appeals noted in *Turner*, "[t]he confirmation statute is in derogation of the common law and must be strictly construed." *Turner*, 207 Ga. App. at 429. Clearly, when strictly construed the language of the statute does not prevent recovery of an independent contractual debt, not a deficiency,[1] voluntarily assumed. Only the legislature may extend the confirmation-of-sale statute to apply to independent contractual obligations.

*Judgment affirmed. All the Justices concur, except Benham, P. J., and Hunstein, J., who dissent.*

BENHAM, Presiding Justice, dissenting.

We granted certiorari to determine whether the use of private mortgage insurance in this case was violative of the public policy of this state as a device for avoidance of the confirmation of sale statute. Being in disagreement with the majority's negative answer to that question, and being in agreement with the reasoning contained in *Redman Indus. v. Tower Properties*, 517 FSupp. 144 (N.D. Ga. 1981), and in agreement with Judge Cooper's dissent in *Turner v. Commonwealth Mtg.*, 207 Ga. App. 428 (428 SE2d 398) (1993), and for additional reasons outlined more specifically herein, I respectfully dissent.

In support of their contention that the Court of Appeals erred in affirming the trial court's judgment, appellants assert that the indemnity contract appellee seeks to enforce violates the public policy of this state which is embodied in OCGA § 44-14-161:

(a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall . . . report the sale . . . for confirmation and approval. . . .

In counterpoint to appellants' contentions, the lender and the in-

---

[1] A "deficiency" is incurred under § 44-14-161
[w]hen any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed . . . .

surance company, relying on *Turner v. Commonwealth Mtg.*, supra, contend that the transaction in this case is protected by their freedom to contract; that the private mortgage insurance arrangement involved in this case is not a cleverly designed scheme to avoid the requirements of the confirmation of sale statute and does not, therefore, violate public policy; and that the private mortgage insurance and indemnity agreement have worthy purposes in that they make financing of housing available with low down payments, which would otherwise not be available.

Freedom of contract is, indeed, a right guaranteed under Georgia law and

> " '[i]t is well settled that contracts will not be avoided by the courts as against public policy, except "where the case is free from doubt and where an injury to the public interest clearly appears." ' "

*Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 603 (275 SE2d 163) (1980), aff'd sub nom. *Emory Univ. v. Porubiansky*, 248 Ga. 391 (282 SE2d 903) (1981).

I have no doubt that injury to the public interest clearly appears in this case. Among the evils fostered by the scheme used in this case are encouragement of foreclosure, escalation in insurance premiums on indemnity insurance because payment of loss is in no way pegged to actual loss, discouragement of forbearance on the part of lenders, imposition of unduly harsh penalties on borrowers through the indemnity provision, unjust enrichment of lenders who have not in fact suffered any loss, and evisceration of the confirmation of sale statute.

The freedom of contract asserted by appellees is not without limit. Under OCGA § 13-8-2 (a), "[a] contract which is against the policy of the law cannot be enforced." In many cases, including *Porubiansky v. Emory Univ.*, supra, the appellate courts of this state have determined that the right to contract is restricted by public policy considerations.

Just recently, in *Lakes v. Marriott Corp.*, 264 Ga. 475 (448 SE2d 203) (1994), we applied such considerations, holding that even where all parties are sophisticated business persons, the state has an interest in assuring that certain rights are protected. In *Lakes*, it was the right to a jury trial which we found to supersede the freedom of contract. Here it is the clear statutory statement of public policy in OCGA § 44-14-161 which should be protected. As Judge Cooper noted in his dissent in *Turner*, supra at 432,

> " '[t]he strongest ground of public policy which occurs for the enforcement of statutes requiring confirmation in fore-

closure proceedings is to protect the debtor from being sub-
jected to double payment in cases where the property was
purchased for a sum less than its market value.' " [Cit.]

Yet the Court of Appeals and now a majority of this court refuse to
protect the interest the confirmation statute was enacted to protect.

The facts of this case clearly show the injustice of this financial
arrangement. At the time of foreclosure, the lender asserted that ap-
pellants owed $65,724.48 on the loan, which was originally made for
$59,000. The lender bought in at foreclosure in the amount of
$62,929.84. The lender decided to forego confirmation and made a
claim of loss to the insurance company for the gross amount it con-
tended was still owing. Under the contract, the insurance company
adjusted the claim down to $64,354.17 and exercised its option to pay
the lender 30 percent of the loss, $19,303.55. The net result is that
without having to expose its practices to judicial review in a confirma-
tion proceeding, the lender received title to the property on which it
was willing to lend almost $60,000, plus a payment of more than
$19,000. In addition, of course, the lender kept all the fees and
charges for making the loan. For its part in the scheme, the insurance
company received the insurance premiums plus the right to indemni-
fication for its payment. That is, it is being paid the amount of the
premium for what amounts to a loan to the lender. And the borrower
loses the property and is saddled with a liability for $19,000 which
represents a loss that was never incurred by the lender. Such a state
of affairs surely must be unjust and the courts should not turn a blind
eye to it.

The insurer contends that the confirmation statute is inapplica-
ble here because it is not a lender under the statute and that the
private mortgage insurance and indemnity agreement are a separate
and distinct contract and not part of the loan transaction.[2] The un-
disputed facts, however, show that the private mortgage insurance
was arranged by the lender and was a prerequisite to obtaining the
loan, and that the indemnity agreement was made mandatory by the

---

[2] Interestingly, appellees argue that the independence of the two transactions is borne
out by the fact that the amount received at foreclosure is irrelevant to the determination of
loss under the contract since the operative event is the foreclosure itself and the proceeds
from the foreclosure play no part in determining liability under the contract. Taking this
argument to its logical conclusion, the lender could initiate foreclosure and buy in at the
foreclosure in the amount of the indebtedness or in excess of the outstanding indebtedness
and even though they would be required to pay any excess over to the borrower they could
still proceed under the indemnity contract contending a loss has taken place. The effect of
such an arrangement would be to create the fiction of a loss when in fact no loss has actually
taken place, and the net result would be that the lender is unjustly enriched and so is the
insurer, which would have received the premiums and the indemnification. Judge Blackburn
noted this same phenomenon in *Turner*, supra.

insurance company. Therefore, they are inextricably intertwined with the loan transaction and should come within the sweep of the confirmation of sale procedure. Hence, I would rule that where, as here, such an indemnity agreement is inextricably intertwined with the loan agreement and is a prerequisite for issuance of the loan, public policy requires that such agreement not be enforced unless there is compliance with the confirmation of sale statute and that indemnification would be limited to actual loss suffered as a result of the foreclosure. Because this scheme is permitted by the holding in *Turner,* supra, I would overrule *Turner.*

In essence what we have here is an artificially created loss and not a true loss. This paper loss is nothing more than a two-step deficiency proceeding which seeks to avoid the statutorily created judicial review of actions seeking deficiency judgments. The insurer gets the premium and indemnification; the lender gets the property and a windfall; and the borrower gets nothing but debt. This procedure seeks to do by indirection that which cannot be done directly because it is prevented by the confirmation of sale statute. This scheme is, therefore, violative of the clear public policy of this state as expressed in the confirmation of sale statute. Because the majority condones this scheme in its affirmance of the decision of the Court of Appeals, I must dissent.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED NOVEMBER 28, 1994.

*Robert E. Price,* for appellants.
*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Smith, Gambrell & Russell, Hishon & Burbage, Robert H. Hishon,* for appellee.