In re Jeffrey SNEAD f/d/b/a, Electrical Design & Construction, Inc., and Judy Snead, Debtors.

Presidential Financial Corporation, Plaintiff,

v.

Jeffrey S. Snead and Judy Snead, Defendants.

Bankruptcy No. 98–67878–JB.
Adversary No. 98–6483.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 18, 1999.

S. Lawrence Polk, Sutherland, Asbill & Brennan, Atlanta, GA, for Plaintiff.

James R. Sacca, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for Defendants.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on defendants' motion to dismiss. Plaintiff Presidential Financial Corporation ("Presidential") filed a complaint to determine the dischargeability of a claim under 11 U.S.C. §§ 523(a)(4) and (a)(6). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The issues raised in the motion to dismiss concern the effect of a lender's failure to obtain confirmation of a foreclosure sale of real estate in Georgia on a lender's action under § 523(a)(6) or § 523(a)(4) of the Bankruptcy Code. Specifically, this case involves the situation where a principal of a corporation guaranteed a corporate debt, the corporate debt was secured by the corporation's accounts receivables, and the guaranty by the individual was secured by a deed to secure debt on the individual's residence. The lender foreclosed on the individual's residence, but failed to obtain confirmation of the sale under O.C.G.A. § 44–14–161. The lender alleges that the individual intentionally converted the proceeds of the corporation's accounts receivable which also secured the loan. Does Georgia law preclude the lender from filing a complaint against the individual under §§ 523(a)(4) or (a)(6) of the Bankruptcy Code, alleging a claim for conversion of the accounts receivable? After considering the parties' briefs and arguments, the Court

concludes that the dischargeability action is not barred as a matter of law, and the motion to dismiss should be denied.

In ruling on a motion to dismiss, the factual allegations of the plaintiff's complaint are accepted as true for the purposes of the motion. The motion must be denied unless it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. *South Fla. Water Management Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir.1996) (citing *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993)).

The facts pertinent to the motion to dismiss are as follows. Presidential is engaged in the business of accounts receivable financing. It loans money to businesses, taking a security interest in their accounts receivable as collateral for the loan. In consideration of a loan in the form of a revolving line of credit, Electrical Design and Construction, Inc. ("Electrical Design") signed demand secured promissory notes on October 11, 1995, in the amount of $100,000.00 and on January 26, 1996, in the amount of $200,000.00. Electrical Design also signed a Loan and Security agreement ("Security Agreement") on October 11, 1995. The collateral is defined in paragraph 2 of the Security Agreement, and it includes all manner of accounts receivable.

The complaint alleges that debtors were officers, directors and shareholders of Electrical Design, and that each of them signed a guaranty agreement to guaranty payment of Presidential's loan to Electrical Design. To secure the guaranties, debtors gave Presidential a deed to secure debt on their residence at 2024 Skyland Glen Drive, Snellville, Georgia (the "Property").

The Sneads filed a Chapter 7 case on May 4, 1998. Presidential filed a motion for relief from the automatic stay on July 9, 1998. The motion sought relief to be able to foreclose on the Property and to seek confirmation of the foreclosure. There was no opposition at the hearing on the motion for relief from the stay held on August 4, 1998, and the Court entered an Order allowing Presidential to exercise its rights under the deed to secure debt, including the right to foreclose and seek confirmation of the sale of the Property.

Plaintiff foreclosed on the Property on September 1, 1998 and filed an application for confirmation of the foreclosure sale in the Superior Court of Gwinnett County. In an Order entered on October 13, 1998, the Superior Court did not confirm the sale, finding that notice was not given to the defendants pursuant to O.C.G.A. §§ 44–14–162.2 and 162.3.[1] Although the language in the Superior Court Order (prepared by debtors' counsel) stated that the "foreclosure . . . is hereby denied," counsel have advised this Court that the Superior Court denied Presidential's request for a resale of the Property, and the Order should have said that confirmation was denied.

Plaintiff filed the complaint to determine dischargeability on September 8, 1998, a month before the confirmation hearing in the Superior Court of Gwinnett County. In the complaint, plaintiff alleges that on October 31, 1996, defendant Jeffrey Snead, acting on behalf of Electrical Design, entered into an agreement with Interface Financial Group ("Interface") in which he pledged accounts and accounts receivable to Interface that were already subject to Presidential's perfected security interest. The complaint alleges that defendants collected proceeds from Presidential's collateral and paid the proceeds over to Interface, and that this conduct constitutes a willful and malicious injury to Presidential's collateral and defalcation, by a fiduciary, all in violation of §§ 523(a)(4) and (6) of the Bankruptcy Code. In papers filed on December 29, 1998, Presidential supplemented the record with a declaration of Prentice Burr, a loan officer at Presidential in 1997. In this declaration, Mr. Burr states that with each advance made by Presidential to Electrical Design, Mr. Snead signed a Draw Request and Assignment of Accounts Receivable. Each Draw Request contained the following pertinent language:

---

1. These sections of the Georgia Code refer to the notice of the initiation of proceedings to exercise a power of sale in a security deed.

Any proceeds from said accounts received by the undersigned shall be received in trust for said Lender, not commingled with other funds, and immediately remitted to the Lender.

The declaration has attached to it copies of Draw Requests signed by Mr. Snead from October 30, 1997 through January 29, 1998. Presidential sued Interface, but Presidential's counsel represents that Interface is defunct and Presidential has been unable to collect any monies from these accounts receivable since March of 1998.

■ Defendants argue that this adversary proceeding is a suit for a deficiency judgment, and that it must fail as a matter of law due to plaintiff's failure to obtain confirmation of the sale of the Property under state law. Plaintiff argues that this is not a suit to establish or enforce a deficiency judgment. Plaintiff claims that this adversary proceeding only seeks damages for tortious conduct consisting of (1) the defendants' wrongful conversion of accounts receivable of their corporation, Electrical Design, in violation of § 523(a)(6), and (2) defalcation while acting in a fiduciary capacity within the meaning of § 523(a)(4), by using proceeds from the accounts receivable of Electrical Design, which the defendants were to hold in trust for Presidential.

■ The Georgia confirmation statute provides that a deficiency judgment is allowed only if "the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon." O.C.G.A. § 44–14–161(a). The confirmation statute was enacted during the Depression when many mortgagors were forced into bankruptcy by the deficiency judgments which were sought and obtained against them after mortgagees had acquired the property at non-judicial foreclosure sales for nominal or reduced prices. The legal effect of a failure to obtain confirmation of a foreclosure sale is that it bars a creditor from seeking a deficiency judgment. Failure to obtain confirmation does not extinguish the debt; it just limits the creditor's remedies.

See O.C.G.A. § 44–14–161; *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 854 (5th Cir.1979); *In re Johnson, Wilson & Dillon*, 123 B.R. 439, 440 (Bankr.N.D.Ga. 1990); *Taylor v. Thompson*, 158 Ga.App. 671, 672, 282 S.E.2d 157, 158 (Ga.Ct.App.1981); *Marler v. Rockmart Bank*, 146 Ga.App. 548, 549–51, 246 S.E.2d 731, 733–34 (Ga.Ct.App. 1978); 2 GEORGE A. PINDAR & GEORGINE S. PINDAR, GEORGIA REAL ESTATE LAW AND PROCEDURE § 21–86 (4th ed.1997).

Many cases hold that the failure to confirm a foreclosure sale does not prevent a creditor from pursuing other collateral on the debt. *Calvert Fire Ins. Co.*, 601 F.2d at 854; *Ricks v. United States*, 434 F.Supp. 1262, 1269 (S.D.Ga.1976); *First Fed. Sav. & Loan Ass'n of Rochester, N.Y. v. Fisher*, 422 F.Supp. 1, 3 (N.D.Ga.1976); *Empire Fin. Servs. v. Gingold (In re Real Estate W. Ventures, L.P.)*, 170 B.R. 736, 743 (Bankr.N.D.Ga.1993); *In re Johnson, Wilson & Dillon*, 123 B.R. at 441; *Business Dev. Corp. of Ga. v. Bickerstaff (In re Bickerstaff)*, 73 B.R. 421, 422 (Bankr.N.D.Ga.1987); *United States v. Oakland City Apartments, Inc. (In re Oakland City Apartments, Inc.)*, 1 B.R. 123, 124 (Bankr.N.D.Ga.1979); *Mobley v. Commonwealth Mortgage Assurance Co.*, 264 Ga. 652, 653, 450 S.E.2d 205, 206 (1994); *Lund v. Commonwealth Mortgage Assurance Co.*, 216 Ga.App. 322, 324, 454 S.E.2d 194, 195 (1995); *Turner v. Commonwealth Mortgage Assurance Co.*, 207 Ga.App. 428, 429, 428 S.E.2d 398, 399 (1993); *Worth v. First Nat'l Bank of Alma*, 175 Ga.App. 297, 298, 333 S.E.2d 173, 174 (1985); *Murray v. Hasty*, 132 Ga.App. 125, 126, 207 S.E.2d 602, 603 (1974). Defendants agree that Presidential may collect on the additional collateral which includes the accounts receivable. At a hearing on defendants' motion to dismiss held on December 16, 1998, defendants' counsel agreed that failure to confirm did not bar Presidential from pursuing the accounts receivable or any proceeds of the accounts receivable held by the debtors. (Tr. Hr'g Def.'s Mot. Dismiss Case at 12 lines 19–23, 15 lines 11–12, 23 lines 10–15.)

If Presidential could have liquidated the accounts receivable, notwithstanding the fail-

ure to obtain confirmation of the sale of the real estate, it follows that Presidential should have the right to sue for tortious conversion of the accounts receivable. In *Kirby v. Chester,* 174 Ga.App. 881, 331 S.E.2d 915 (1985), the Court addressed the remedies available to a creditor when another party's negligence caused the creditor to lose its additional collateral. In that case, the creditor loaned some money to the debtor in exchange for a security interest in two parcels of property. An attorney certified to the creditor that the debtor held title to both parcels. After the debtor defaulted, the creditor discovered that, contrary to the attorney's certification, the debtor had no recorded interest in one of the parcels of property. The creditor sued the attorney for malpractice, alleging that he had been damaged as a result of an omission or negligence. The attorney argued that the malpractice action was barred because the creditor had failed to confirm the sale of the first property. The Court of Appeals reversed the trial court and ruled for the creditor, holding that there is no confirmation prerequisite for a suit based on legal malpractice. The Court also stated:

> [the creditor]'s failure to pursue confirmation would not operate to extinguish the debt, nor would it estop [the creditor] from pursuing other contractual security, if he had such. The very gravamen of the instant suit is that [the creditor] does not have such security to turn to because of the alleged malpractice of the appellee. To follow the trial court's analysis here would protect a tortfeasor from liability by a legal prerequisite meant to shield a defaulting debtor from an unfairly large deficiency due to a foreclosure below market value.

*Id.* at 883, 331 S.E.2d at 918 (citations omitted).

Although the suit in *Kirby* was not against the debtor, the reasoning in *Kirby* and the conclusion that failure to confirm a sale does not bar a tort-based action relating to additional collateral is applicable here. If plain-

tiff's allegations are true that defendants wrongfully converted proceeds of the accounts receivable, plaintiff should be able to pursue the defendants for conversion. *See Ford Motor Credit Co. v. Owens,* 807 F.2d 1556, 1559 (11th Cir.1987). However, as Presidential readily acknowledges, its recovery would be limited to the value of the accounts receivable converted at the time of conversion, not the total debt owing. *Friendly Fin. Serv. Mid–City, Inc. v. Modicue (In re Modicue),* 926 F.2d 452, 453 (5th Cir.1991); *Sears, Roebuck & Co. v. Taylor (In re Taylor),* 211 B.R. 1006, 1014 (Bankr. M.D.Fla.1997); *Avco Fin. Servs. of Ala., Inc. v. Alexander (In re Alexander),* 201 B.R. 294, 298 (Bankr.N.D.Ala.1996).

Defendants argue that the reasoning in *State Bank of Hallsville v. Hull (In re Hull),* 148 B.R. 917 (Bankr.W.D.Mo.1993) and *Southwest Bank v. Parsons (In re Parsons),* 124 B.R. 818 (Bankr.S.D.Cal.1991) bars Presidential's claims. This argument is without merit. Both cases involve the consequences of the failure to give notice of a personal property foreclosure, one in California and one in Missouri. The case at bar is about the failure to obtain confirmation in Georgia of a foreclosure of real property.[2] Furthermore, the rules in Georgia regarding disposition of personalty and disposition of realty are not the same. *See Bus. Dev. Corp. of Ga. v. Bickerstaff (In re Bickerstaff),* 73 B.R. 421, 423 (Bankr.N.D.Ga.1987).

In the *Parsons* case relied on by the debtors, a creditor repossessed and sold equipment pledged as collateral by the debtor, but failed to give the debtor notice of the sale, as required by the California Commercial Code. After the sale, the creditor filed a dischargeability action against the debtor under 11 U.S.C. § 523(a)(2)(A) and (B), alleging the debt was incurred by fraud. The court held that the deficiency judgment was the only claim supporting the § 523 action, and so it was dismissed, because under California law, a secured creditor is barred from obtaining a

---

**2.** If California law is helpful here, Presidential points to cases decided under California's Anti-Deficiency Statute. *See Hardin v. Gianni (In re King Street Investments, Inc.),* 219 B.R. 848 (9th Cir. BAP 1998) (holding that the anti-deficiency statute did not prohibit lender from seeking damages for constructive fraud); *Commonwealth Fin. Corp. v. Franklin (In re Franklin),* 87 B.R. 93 (9th Cir. BAP 1988).

deficiency judgment in the event it fails to give a debtor notice of the sale of personal property. In the case at bar, a deficiency judgment is not the claim supporting Presidential's § 523 action. The § 523 action is not based on § 523(a)(2), and Presidential does not claim that the debt was incurred by fraud. The claim by Presidential in this adversary proceeding is based on allegations of tortious conversion of accounts receivable under § 523(a)(6) and defalcation or embezzlement of the proceeds of accounts receivable under § 523(a)(4).

Defendants' reliance on *Hull* is also misplaced. *Hull* is a 1993 case out of a bankruptcy court in Missouri. It is based on a 1986 Eleventh Circuit case which was in turn based on Georgia law that was effectively overturned in 1987. In *Hull*, a secured creditor failed to give the debtor notice prior to disposing of personal property in violation of Missouri's Commercial Code § 400.9-504(3). The court held that the creditor was precluded from maintaining a claim under either § 523(a)(2) or § 523(a)(6) of the Bankruptcy Code, relying on its earlier ruling in *In re Boehne*, 82 B.R. 525 (Bankr.W.D.Mo.1988). In *Boehne*, the same bankruptcy court in Missouri considered whether a creditor lost the ability to foreclose on real estate, when the creditor failed to give notice of a foreclosure sale of personal property. Unable to locate a Missouri case on point, the *Boehne* court turned to the Eleventh Circuit case of *United States v. Kennedy (In re Kennedy)*, 785 F.2d 1553 (11th Cir.1986). In *Kennedy*, the Eleventh Circuit had certified the following question to the Supreme Court of Georgia:

> Whether the bar against collection of any deficiency if a sale of collateral occurs without notice, in violation of O.C.G.A. § 11-9-504(3), prevents a creditor holding a claim secured by both personal property and real property from proceeding against the real estate to collect the balance remaining after a commercially unreasonable sale of the personalty.

*Id.* at 1557.

The Supreme Court of Georgia, in a very short opinion, held that where a sale of collateral occurs without notice, in violation of O.C.G.A. § 11-9-504(3), the bar against collection of a deficiency upon the debt secured by such collateral prevents a creditor from proceeding against additional collateral or against co-obligors or accommodating parties. *United States v. Kennedy*, 256 Ga. 345, 348 S.E.2d 636 (1986). Receiving an answer to the certified question, the Eleventh Circuit then held that the failure of the creditor to give notice of the intended sale of personal property barred any recovery based on a lien on real estate. *United States v. Kennedy (In re Kennedy)*, 806 F.2d 1014, 1015 (11th Cir. 1986).

What the defendants fail to point out is that in 1987, one year after *Kennedy*, and *before* both *Boehne* and *Hull*, the Supreme Court of Georgia reevaluated the harshness of the absolute-bar rule followed in *Kennedy* and held that it was contrary to the intent of the Uniform Commercial Code. In *Emmons v. Burkett*, 256 Ga. 855, 353 S.E.2d 908 (1987), the Supreme Court of Georgia instead adopted the fairer rebuttable-presumption rule under which, if a creditor fails to give notice under O.C.G.A. § 11-9-504(3), the presumption is raised that the value of the collateral is equal to the indebtedness. However, the creditor can overcome the presumption by presenting evidence of the fair and reasonable value of the collateral and that such value is less than the debt. If the presumption is rebutted, the creditor can collect a deficiency either from other collateral or by way of a personal judgment. Thus, *Hull* is of limited utility here both because it involves a personal property foreclosure and because it relied on law which had been overturned.

In a supplemental brief, debtors argue that this case is similar to the facts in the unreported decision of *Federal Home Loan Mortgage Corp. v. Hsu*, Civil Action No. 1:90–cv–1940 (N.D. Ga., April 5, 1991) *aff'd* 949 F.2d 1163 (11th Cir.1991). There, the plaintiff, Federal Home Loan Mortgage Company ("FHLMC") foreclosed on an apartment complex and then filed a complaint for damages alleging that the defendants allowed the condition of the property to deteriorate, causing waste, that the defendants breached their fiduciary duty by retaining rents and that the

defendants breached the contract by refusing to pay a significant water bill to the City of Atlanta. The Court granted defendants' motion to dismiss, holding that the complaint was in reality a deficiency claim which was barred, since the plaintiff had failed to obtain confirmation of the foreclosure as required by O.C.G.A. § 44–14–161(a). In finding that the complaint was a deficiency claim, the Court held that the security deed covered all of the breaches asserted by the plaintiff, as the security deed imposed a duty to avoid waste, required the defendants to collect and turn over the rents, and imposed a contractual duty upon the defendants to pay the water bills. Since all of the claims in the complaint were embraced by the security deed which was the subject of the foreclosure action, the Court found that the action was barred. The Court also found that there was no independent cause of action for waste, no independent duty to collect and turn over rents and no independent duty to the plaintiff to pay the water bill. All of these duties were found in the security deed and thus could not be sued upon after the unconfirmed foreclosure.

In the case at bar, plaintiff's claim is for double-pledging and converting accounts receivable. The security deed that was foreclosed upon by Presidential does not contain any provision concerning debtors' obligation to hold the proceeds of the accounts receivable. This obligation arises from the draw requests and assignments of accounts receivables that were signed by the defendants each time they made a request for an individual credit advance. The deed to secure debt foreclosed upon does not reference or encompass any of the obligations created by the draw requests. In *Hsu*, all the claims related to maintaining the real property or the proceeds from the real property that was foreclosed upon. Here, Presidential's claims are unrelated to the real property that was foreclosed upon. The claims relate to separate collateral, i.e., the accounts receivable of the business, that plaintiff agrees Presidential was entitled to pursue. Finally, as plaintiff points out, the *Hsu* case was unreported, it has not been cited in any reported decision, and it was affirmed without opinion such that it has no precedential value. 11th Cir. R. 36–2.

Finally, at the hearing on the motion to dismiss, defendants argued that Presidential has collected some receivables and foreclosed on other real estate. Defendants are correct that Presidential should not be able to collect more than it is owed. However, it is not clear from the current record what amounts Presidential has collected, from what collateral, and how these amounts have been credited. In discovery, the parties should ascertain these facts, and they should focus on which accounts receivable were allegedly converted by the defendants and how the value of those accounts receivable at the time of conversion compares to any outstanding debt. Until the record is developed on these facts, it will be difficult to make any findings or conclusions on this matter.

In accordance with the above reasoning, defendants' motion to dismiss this adversary proceeding is DENIED.