A99A0705. VSI ENTERPRISES, INC. et al. v. EDWARDS.
(518 SE2d 765)

ELDRIDGE, Judge.

On June 28, 1996, Integrated Network Services, Incorporated ("INS") merged with INS Acquisition Company, the wholly owned subsidiary of VSI Enterprises, Incorporated ("VSI"). The INS shareholders received VSI shares as a result of the merger. Appellants are

VSI and INS Acquisition Company.

Following the merger, INS delivered to its shareholders a notice explaining their right to dissent to the merger. The cover letter of the notice of dissenters' rights was dated June 27, 1996. The notice stated that shareholders had a right to refuse to accept the consideration offered for their shares in the merger and to invoke their dissenters' rights to seek a higher value for their shares. The notice included pertinent portions of the Corporation Code. The notice stated: "If you elect to demand payment for your shares under Article XIII of the Code, the payment demand must be sent to the offices of INS as set forth below and certificates evidencing shares of stock in INS must be deposited at said corporate offices on or before August 9, 1996."

Peggy Edwards, plaintiff-appellee, was a stockholder of INS. On August 9, 1996, Peggy Edwards through her counsel gave notice to the company that she was invoking her dissenters' rights. Her counsel did not include with the notice her stock certificates to INS because she did not have them.

In either May or June 1996, Ms. Edwards delivered to INS her old stock certificates of INS so that she could be issued new certificates, but she never received the replacement certificate. She believed that INS still possessed her shares.

Ms. Edwards' dissenters' notice stated that "INS already has possession of the stock certificate held by Peggy Edwards; she presented them to the company several months ago in order to have them reissued in her name, but INS failed to deliver new certificates to her." However, in fact, INS, without Ms. Edwards' knowledge, sent the replacement stock certificate to Ms. Edwards' former counsel, James Johnson, on June 24, 1996, which was four days prior to the merger. She did not know that Johnson had possession of the certificate, and Johnson failed to deliver the certificate to her after he ceased to represent her.

After receipt of Ms. Edwards' payment demand, appellants by letter acknowledged her demand and made a cash offer for her stock. Appellants made no objection to the lack of tender of the stock certificate, did not deny possession of the certificate; and did not tell her who had possession of her stock, but instead treated Ms. Edwards as if she were in full compliance with notice regarding dissenters' rights. Appellants made a further offer to purchase her stock and advised her for the first time that her stock certificate had been delivered to Mr. Johnson. She was further advised by the appellants regarding how to treat the certificate as lost in the event that it could not be found by executing an affidavit and that the stock certificate would be replaced. The appellants never took the position with Ms. Edwards that she had lost her dissenters' rights by failing to tender

the stock certificate timely during the period to dissent.

When Ms. Edwards learned from appellants where the stock certificate was, she promptly retrieved it. On November 4, 1996, Ms. Edwards immediately tendered the stock certificate and a demand for $140,156 for her stock to appellants. On November 22, 1996, appellants in writing acknowledged receipt of the stock certificate and the demand and renewed the cash offer.

Appellants did not file suit within 60 days of the demand to determine the value of the stock. On January 17, 1997, Ms. Edwards filed this complaint, seeking payment of $140,156 for the shares, plus interest and attorney fees. In its answer, appellants raised only the defense of failure to timely tender her stock certificate when she first demanded payment.

On March 26, 1998, judgment was filed on the cross motions for summary judgment, the trial court ruled for Ms. Edwards and against appellants. *Held*:

1. Appellants contend that the trial court erred in granting summary judgment in favor of Ms. Edwards and denying it to them. We do not agree.

(a) OCGA §§ 14-2-1323 and 14-2-1324 of the Georgia Business Corporate Code were written to be construed in pari materia. OCGA § 14-2-1323 deals with a situation wherein a dissent is conditioned upon the timely tender of the stock certificate when the dissenter has possession of the stock certificate so that a tender can be made. OCGA § 14-2-1324, however, deals with a situation where the dissenter does *not* have possession of the stock certificate and cannot sell it.

OCGA § 14-2-1324 provides a method in which a corporation can prevent a dissenter from using the dissent as a way to hedge against the market by restricting transfer from the date of the demand. In this regard, the Comment to OCGA § 14-2-1323 states that the intent of the legislature for the tender of the stock certificate was to prevent a specific abuse:

> The deposit of share certificates is necessary to prevent dissenters from giving themselves a 30-day option to make payment if the market price of the shares goes down, but sell their shares on the open market if the price goes up. If this kind of speculation were possible, all sophisticated investors might be expected to file demands that they would not intend to carry through unless the price should fall. If the shares are not represented by certificates, the corporation can prevent speculation by restricting their transfer, as authorized by section 14-2-1324. . . . Subsection (c) provides that a person who . . . does not deposit his share cer-

tificates as required by Section 14-2-1324 (a) loses his status as a dissenter entitled to payment for his shares. . . . The Code creates a bright line rather than leave the matter uncertain for extended periods.[1]

Thus, the legislature expected there to be situations where the dissenter lacked actual physical possession of certified shares and provided a method to prevent the evil that delivery of the stock certificates was intended to prevent. Under OCGA § 14-2-141 (c), appellants failed to deliver the stock certificates to Ms. Edwards at the "shareholder's address shown in the corporation's current record of shareholders."

[I]t is the duty of officers of a corporation to see that all transfers of its shares are properly made on its stock books, either by the stockholders themselves or persons having authority from them. A corporation transfers stock at its peril, and must be sure that the person to whom it issues the certificate is the true owner.

(Citations and punctuation omitted.) *Frye v. Commonwealth Inv. Co.*, 107 Ga. App. 739, 741-742 (2) (131 SE2d 569), aff'd, 219 Ga. 498 (134 SE2d 39) (1963).

Thus, INS' actions deprived Ms. Edwards of physical possession of her stock certificate and made actual delivery to her dependent upon a third party, her former attorney. It was the fault of INS that Ms. Edwards did not know where her stock certificate was; at a minimum, INS should have copied her with the transmittal letter to let her know that the certificate had been issued and that it had been sent to her former attorney. Absent a written authorization from Ms. Edwards in INS' records, the stock certificate should not have been delivered to Mr. Johnson. As successors to INS, appellants as fiduciaries created this situation. See *Rank Organization Ltd. v. Pathe Labs.*, 33 Misc.2d 748 (227 NYS2d 562) (N. Y. Sup. 1962). Appellants seek to take advantage of a situation of its own creation.

Facts and circumstances may arise, as in this case, where a dissenter has no stock certificate in his physical possession to surrender, although dissenting is the shareholder's intent. Those circumstances may include situations where the stock was pledged as security, lost, destroyed, physically inaccessible, under a court order,

---

[1] In attempting to ascertain the legislative intent of the Act, the court may look to the caption of the act and its legislative history to determine the true purpose of the act. *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997); *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (a) (436 SE2d 219) (1993).

stolen, wrongfully converted, or held by a third person. In such circumstances, 30 days is an insufficient time within which to reacquire physical possession to make a physical tender. Of course, the dissenter could make out an affidavit describing why the share is beyond his control and request that the corporation issue a new certificate; however, the corporation, by delay, has the power to make such issue of a new stock certificate outside the time to tender. Therefore, to request a new certificate would be a futile act. For all practical purposes, the inaccessibility of the shares to make a physical tender also renders the shares inaccessible to transfer on the open market. The circumstances render such shares the functional equivalent of uncertified shares under OCGA § 14-2-1324 and permit the corporation to protect itself by blocking transfer. Therefore, a notice of dissent, absent tender when tender is impossible, acts as substantial compliance with the statutory requirement and the true legislative purpose.

Under OCGA § 1-3-1 (c), "[a] substantial compliance with any statutory requirement . . . shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." See *O'Neal v. Spencer*, 203 Ga. 588 (1) (47 SE2d 646) (1948); *City of College Park v. Atlantic S. E. Airlines,* 194 Ga. App. 637, 639 (391 SE2d 460) (1990). OCGA § 14-2-1324 prevents OCGA § 14-2-1323 (c) from being "expressly so provided by law" under the circumstances of this case, because the statutory purpose has been satisfied without causing a legislative absurdity, i.e., unjust treatment when delivery is beyond the control of the dissenter. *Bd. of Trustees of the Policemen's Pension Fund v. Christy,* 246 Ga. 553, 554 (1) (272 SE2d 288) (1980); *Gen. Elec. Credit Corp. v. Brooks,* 242 Ga. 109, 112 (249 SE2d 596) (1978); *City of Jesup v. Bennett,* 226 Ga. 606, 608-609 (2) (176 SE2d 81) (1970).

In interpreting statutes, the courts must look to the intent of the legislature and construe statutes to effectuate that intent. See *City of Roswell v. City of Atlanta,* 261 Ga. 657 (1) (410 SE2d 28) (1991). Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden. *City of Jesup v. Bennett,* supra at 608-609. However, when the statute is construed with related statutes, in pari materia, creating a possible conflict, then such statutes should be harmonized whenever possible to assist in determining the legislative intent. *Ryan v. Chatham County,* 203 Ga. 730, 731-732 (48 SE2d 86) (1948); *Monticello, Ltd. v. City of Atlanta,* 231 Ga. App. 382, 383 (499 SE2d 157) (1998).

In order to harmonize the two statutes when the statutes have an apparent conflict, the court must determine the purpose of the acts and the intent of the legislature in trying to cure an evil and then try to construe the statutes to implement the intent. *Kemp v.*

*City of Claxton*, 269 Ga. 173, 175 (1) (496 SE2d 712) (1998); *Mullins v. First Gen. Ins. Co.*, 253 Ga. 486, 487 (322 SE2d 265) (1984); *McGuire v. McGuire*, 228 Ga. 782, 785 (187 SE2d 859) (1972). All statutes are to be construed in connection and in harmony with existing law and their meaning and effect is to be determined in connection with related law. *Thornton v. Anderson*, 207 Ga. 714, 718 (64 SE2d 186) (1951).

Although the literal language of the Act may be plain and unequivocal, it is the duty of the courts, in determining the legislative intent, to refrain from ascribing to the legislature a wholly unreasonable intention or an intention to do a futile and useless thing. *Bd. of Trustees of the Policemen's Pension Fund v. Christy*, supra; *Gen. Elec. Credit Corp. v. Brooks*, supra; *City of Jesup v. Bennett*, supra. Where the letter of the statute results in absurdity or injustice or leads to contradictions, the meaning of the general language may be restrained by the spirit or reason of the statute in order to give effect to the legislative intent. *Sirmans v. Sirmans*, 222 Ga. 202, 204 (149 SE2d 101) (1966); see also *Kemp v. City of Claxton*, supra at 175-176; *New Amsterdam Cas. Co. v. Freeland*, 216 Ga. 491, 495 (117 SE2d 538) (1960). Where the law is susceptible of more than one construction, the Act must be given that construction which is most equitable and just. *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 468 (62 SE2d 209) (1950); *Jenkins v. State*, 93 Ga. App. 360, 366 (92 SE2d 43) (1956).

Thus, here, where the spirit of the law and intent of the law can be carried out so that the legislative purpose is fully satisfied without harm to the statutory scheme, such construction prevails over the literal reading of the language of the Act. *Kemp v. City of Claxton*, supra at 175-176. It was proper to construe the Act so that Ms. Edwards was in compliance with the requirements establishing dissenters' rights, even though she did not tender her stock certificate within the dissenters' rights time period.

(b) OCGA § 14-2-1323 (c) was a right created to protect the appellants with regard to the dissenter. Just as the statute provides that the dissenter may waive his or her right to dissent by failure to comply with OCGA § 14-2-1323 (c), OCGA § 14-2-1330 provides that the corporation may waive its right to contest the dissenter's evaluation by not timely filing suit. See *Riddle-Bradley, Inc. v. Riddle*, 217 Ga. App. 725 (459 SE2d 576) (1995). Any suit by the corporation is a proceeding in equity. See OCGA § 14-2-1330 (b). Appellants, by continuing to deal with Ms. Edwards as if she had timely filed her dissent with delivery of stock certificates and by causing her delay in obtaining possession of her stock certificate waived their right to assert a default. See *Aaron Rents v. Corr*, 133 Ga. App. 296, 302-304 (211 SE2d 156) (1974). While *Aaron Rents v. Corr*, supra, was decided

under a dissimilar former corporate code section dealing with dissenters' rights and wherein the corporation admitted the intentional waiver, the case controls as to waiver of the timeliness of the dissenters' notice, because the case stands for the proposition that such defense to dissenters' rights can be waived. However, a factual issue normally arises as to whether a waiver in fact occurred. But appellants submitted no evidence to raise a material issue of fact of lack of intent to waive and rested on its pleadings and motion instead. Ms. Edwards submitted evidence to make out a prima facie case of waiver, and appellants failed to come forward to meet the shifted burden of persuasion. Therefore, the trial court properly granted Ms. Edwards' motion for summary judgment based upon the evidence in the record and denied appellants' motion. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Appellants contend that the trial court erred in awarding attorney fees and expert witness fees to Ms. Edwards. We agree.

The award of attorney fees is not generally allowed as part of the damages under the common law. In Georgia, attorney fees are recoverable only where authorized by some statutory provision or by contract. Thus, costs or expenses do not include attorney fees. *Bowers v. Fulton County*, 227 Ga. 814, 815-816 (183 SE2d 347) (1971); *Money v. Thompson & Green Machinery,* 155 Ga. App. 566, 567 (271 SE2d 699) (1980); *Solomon Refrigeration v. Osburn*, 148 Ga. App. 772, 773 (2) (252 SE2d 686) (1979). Since any such statute is in derogation of common law, then it must be strictly construed against the award of such damages. *Browning v. Gaster Lumber Co.*, 267 Ga. 72, 73 (475 SE2d 576) (1996); *Mobley v. Commonwealth Mtg. Assur. Co.*, 264 Ga. 652, 654 (450 SE2d 205) (1994); *Warren v. Walton*, 231 Ga. 495, 499-500 (202 SE2d 405) (1973).

The trial court awarded the attorney fees and expert witness fees under the authority of OCGA § 14-2-1331, which reads in pertinent part:

[t]he court in an appraisal proceeding commenced under Code Section 14-2-1330 shall determine all costs of the proceeding, including the reasonable compensation and expenses of appraisers appointed by the court, but not including fees and expenses of attorneys and experts for the respective parties.

The official comment to the Act states: "[a]ttorneys' fees and the costs of experts employed by the parties have been excluded from these assessments. This preserves the approach of former law, § 14-2-251 (g) (7)." OCGA § 14-2-1331, comment p. 378. The plain language of the statute expressly excludes attorney fees. However, this action

was not brought as a judicial appraisal proceeding under OCGA § 14-2-1330. Ms. Edwards, throughout the trial and appeal, has maintained that "[i]f the corporation does not commence the proceeding within the 60 day period, it shall pay each dissenter whose demand remains unsettled the amount demanded." OCGA § 14-2-1330 (a). This Court has held that, where the corporation does not commence the appraisal proceeding within the 60-day window of opportunity, the trial court lacks subject matter jurisdiction to hear such issues. *Riddle-Bradley, Inc. v. Riddle*, supra at 726 (1). Therefore, the condition precedent to the award of costs of litigation under OCGA § 14-2-1331 (a) or (b) of a judicial appraisal proceeding has not been met, and the trial court lacked authority to make such award of damages under either OCGA § 14-2-1331 (a) or (b). OCGA § 14-2-1331 (b) does not apply in this case, because there was no evidence that there had not been substantial compliance by the corporation with OCGA §§ 14-2-1320 through 14-2-1327. While appellants did not comply strictly with OCGA § 14-2-1325 (a) by making an offer within ten days or producing the financial information required by OCGA § 14-2-1325 (b), on October 4, 1996, the offer was made, accompanied by the required financial information, which was substantial compliance. Since the action before the trial court was not brought under OCGA § 14-2-1330, then OCGA § 14-2-1331 was not applicable, because the trial court lacked subject matter jurisdiction under such statutory scheme. *Riddle-Bradley, Inc. v. Riddle*, supra at 726 (1). The trial court erred in awarding attorney fees, attorney expenses, and expert witness fees and expenses. Therefore, the judgment as to such awards is vacated and upon remand the trial court shall enter a judgment which is consistent with this opinion.

*Judgment affirmed in part, reversed in part and case remanded. Pope, P. J., and Smith, J., concur.*

DECIDED JUNE 1, 1999.

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr., Jason S. Bell*, for appellants.

*William G. Leonard*, for appellee.