**In re Douglas A. BOEHNE & Judy K. Boehne, Debtors.**

**Bankruptcy No. 87–03656–S–2–13.**

United States Bankruptcy Court, W.D. Missouri, S.D.

Jan. 27, 1988.

David E. Schroeder, Springfield, Mo., for debtors.

Charles D. Curless, Lamar, Mo., for Boatmen's Bank of Lockwood.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This matter arose out of a Motion For Relief From Stay filed by the Boatmen's Bank of Lockwood and vigorously opposed by debtors on the theory that the debt to the movant had been extinguished by actions of said movant prior to the bankruptcy. The Court has been unable to locate any cases directly in point and suspects that there are no Missouri cases directly in point. A brief history of the background follows:

Debtors were indebted to movant and movant filed suit in the Circuit Court of Dade County. Said indebtedness was secured by certain personal property. The suit was in two counts. Count I was for replevin. Count II was for a money judgment. Debtors apparently filed a counterclaim against movant. The end result of the aforesaid state court action was that, upon stipulation of the parties, a final judgment was entered on December 2, 1985, by the Honorable C. David Darnold, Judge of the Circuit Court of Dade County. That judgment awarded movant a judgment for possession of the personal property in Count I. That judgment also awarded movant a judgment for $69,661.61 together with interest from March 13, 1985, until fully paid, at the rate of 13% per annum, plus attorney fees of $1,500.00. The judgment in Count I, as well as the stipulation, ordered debtors to deliver possession of the personal property to movant, upon demand, after December 4, 1985. All costs were taxed to debtors.

There was conflicting evidence as to what occurred either as to demand by the movant or delivery by the debtors, but the Court finds that debtors did not deliver possession to movant as stipulated and ordered. Instead the aid of the Sheriff was invoked and after his intervention livestock was picked up, taken to the sale barn and sold at public auction. However, the Sheriff was not involved in the actual taking or delivery of the property. No written notice of the time, date or place of sale was given to debtors. In addition there was substantial other personal property taken into possession by the movant, advertised in the Lake Stockton Shopper, and sold at private sale on sealed bids. The advertisement indicated the bidding process closed at noon on February 15, 1986. Again, no formal written notice of the time after which the property would be sold was given to the debtors. It appears that some $26,536.05 was realized from the respective dispositions of the livestock and other personalty.

Subsequently, movant discovered that debtors owned some real estate and on January 8, 1987, movant requested an execution on 120 acres of land located in Dade County, Missouri. That execution was

served on debtor, Judy K. Boehne on February 4, 1987. However, by Warranty Deed executed December 6, 1986, debtors had conveyed said 120 acres to C.R. Kaelke and Amanda E. Kaelke, husband and wife. C.R. Kaelke and Amanda E. Kaelke had deeded the property to debtors on September 21, 1982. The Kaelkes are relatives of the debtors and there was no consideration paid to either set of grantors at the time of either transfer.

Movant apparently geared up to start a fraudulent conveyance action under Mo.R.S. 428.020 and debtors filed their Chapter 13 proceeding on August 24, 1987. Movant now wants to lift the stay to proceed with a fraudulent conveyance action in state court. Debtors, under the theory first announced in Missouri in *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860 (Mo.App.1978), oppose the lift of stay. Debtors contend that failure to furnish notice of disposition of personal property under Mo.R.S. 400.9–504(1) et seq. prior to said sale has caused the movant not only to lose the ability to pursue a deficiency, but has in effect satisfied the money judgment and eliminated any real property lien that movant had on the 120 acres as a result of its money judgment of December 2, 1985. To paraphrase and summarize, debtors contend that movant sold personal property without notice and thus in a commercially unreasonable manner; that the sales satisfied the judgment since any balance unpaid would be the equivalent of a deficiency claim. That if there is no balance, there can be no pursuit of the real estate either by execution and levy or fraudulent conveyance action, ergo the Court should not lift the stay.

■ Although this argument is not without merit, it enlarges considerably the scope of both *Gateway*, supra, and *Executive Financial Services, Inc. v. Garrison*, 535 F.Supp. 263 (W.D.Mo.1982) affirmed at 722 F.2d 417 (8th Cir.1983) which are the only two cases cited upon the point by either counsel for the debtors or counsel for the movant. Frankly, the Court was not satisfied with the research done by either party and has perforce had to add its

efforts to those of counsel. Hopefully those will result in an enlightened approach to the problems posed.

Notwithstanding the erroneous material in 10 A.L.R. 4th, under *Improper Sale of Collateral—Judgment Bar*, § 4, p. 423 and although *Wirth v. Heavey*, 508 S.W.2d 263 (Mo.App.1974) has never been explicitly overruled, it is well settled that the law in Missouri is that a deficiency remaining after sale of personal property securing payment of an obligation secured by said personal property may not be pursued if the sale was not conducted in a commercially reasonable manner; and that failure to notify a party potentially liable for said deficiency is per se proof of lack of commercial reasonableness, at least as to the unnotified party. This is announced not only in *Gateway Aviation*, supra, and *Executive Financial Services*, supra, but also in *Clune Equipment Leasing Corporation v. Spangler*, 615 S.W.2d 106 (Mo.Ct.App.So. Dist.1981), and in *Chemical Sales Co. v. Diamond Chemical Co.*, 766 F.2d 364 (8th Cir.1985) wherein the Court said at page 369:

> "Therefore, any failure by defendant to give notice of the sale of collateral should preclude any recovery ... beyond the value of the collateral".

However, that Court did hold that since the attempt to assert the deficiency in that case arose within the context of a counterclaim against an alleged conversion of the same personal property, the creditor was entitled to assert its deficiency against any finding of a value in excess of the sale price. For example, if the creditor were owed $100,000.00, repossessed the collateral improperly, sold it for $50,000.00, gave no notice to the debtor, and was subsequently sued for conversion, then the creditor could still assert the $50,000.00 deficiency against any value of the collateral found to be in excess of the sale price. Thus, the rule that this Court chooses to label as the "No notice—No deficiency" doctrine has at least one exception. Absent that exception, however, the Court can find neither a Missouri nor a Federal case in Missouri, that does not sustain the "No Notice—No Deficiency" approach. This Court, there-

fore, adopts the "No–Notice–No Deficiency" rule.

The second issue to be determined is what is the effect of "no notice" where the creditor holds two simultaneous liens, one on real estate and one on personal property. Stated in the obverse, if the creditor forecloses on the personal property first and fails to give notice of public or private sale, does it lose the ability to foreclose on the real estate that was also subject to its lien? The Court has been unable to locate any Missouri case in point. However, there is an Eleventh Circuit decision that is strongly similar to the present case. In *In re Kennedy*, 785 F.2d 1553 (11th Cir.1986) the Circuit Court considered the question of whether a real estate lien on the property of a borrower's parents was vitiated by foreclosure on the borrower's personal property and sale thereof without notice. Borrower had filed a Chapter 7 bankruptcy and both borrower and his Chapter 7 Trustee had abandoned the personal property. The lender sold the property without notice to the parents. The parents then filed a Chapter 11 and raised the "no notice—no deficiency" theory as a defense to the lender's claim in the Chapter 11.

The Court after striking down the asserted defenses of waiver and overriding federal regulations, certified to the Supreme Court of the State of Georgia the following question:

> "Whether the bar against collection of any deficiency if a sale of collateral occurs without notice, in violation of O.C.G.A. § 11–9–504(3), prevents a creditor holding a claim secured by both personal property and real estate to collect the balance remaining after a commercially unreasonable sale of the personalty".

After the Supreme Court of the State of Georgia answered that question in the affirmative in *United States v. Kennedy*, 256 G.A. 345, 348 S.E.2d 636 (1986), the Eleventh Circuit then ruled in *In re Kennedy*, 806 F.2d 1014 (11th Cir.1986) that the failure of the creditor to give notice of the intended sale barred any recovery on the lien on the real estate.

Although that ruling is not binding upon this Court, it is suggestively dispositive of the issues that face this Court. Nor does it stand alone like a single beacon in a dark and uncharted area. The Honorable Thomas M. Herbert, Bankruptcy Judge, disallowed a claim for such an alleged deficiency in a Chapter 13 proceeding. *In re Lucas*, 28 B.R. 366 (Bkrtcy.S.D.Ohio 1982). In that case, the creditor had repossessed and sold a motor home without proper notice and then filed a claim for its $13,323.14 deficiency in the following Chapter 13 proceeding filed by the debtor. The claim was disallowed in toto. There are other cases of similar ilk.

Movant does raise two points. First, it says that its real estate lien is outside the purview of the Uniform Commercial Code because that body of law concerns only personal property (and fixtures). It is true that both the inclusive provision of the code § 400.9–102 R.S.Mo. and the exclusive provision of the code § 400.9–104 R.S.Mo., would support movant's position. However, the *Kennedy* case, cited herein previously, seems to answer that argument. Certainly neither the Eleventh Circuit nor the Supreme Court of the State of Georgia had any difficulty in invalidating a real estate mortgage (which would not be within the purview of the Uniform Commercial Code) based on the commercially unreasonable disposition of the personal property. However, it is clear that the question seems to be one of first impression in the State of Missouri. In the absence of state law, this Court will venture to predict what the rule would be in the State of Missouri. See Koger, *Recent Developments in Missouri Commercial Law*, 48 UMKC L.Rev. 531, 531–33 (1980).

■ Movant's second point is that it is not seeking a deficiency and that it already had a judgment rendered on December 2, 1985, for $69,661.61 plus $1,500.00 attorney fees. There are two distinct problems with that argument. Initially the general execution issued to the Sheriff on said judgment was returned by the Sheriff of Dade County on or before December 23, 1985. The Sheriff's return read:

"I went along with Bank Officials and served this General Execution. Mr. Boehne and Keran Lemons made an agreement that the articles would not be remove (sic) until later".

Therefore, the Sheriff never levied on the items of personal property and never took them into his possession and never sold same. Had he done so, that sale would have been exempt from the requirements of R.S.Mo. Section 400.9–504(3) and movant could proceed to recover any "deficiency" or balance on the judgment. Instead movant went to the farm at a later date, loaded up the personalty and subsequently sold it. In movant's exhibits (labeled Debtor 10 Deposition Exhibit 9/22/87) movant set out how the judgment was calculated beginning at $69,661.61 and how it was credited and debited with the sale proceeds and the accruing interest. Movant's two count judgment was an alternative judgment for possession or $69,661.61 total—not a cumulative judgment for the property and $69,661.61 in addition.

When movant took possession of the personalty it was either:

1. Enforcing its right to possession under the security agreement; or

2. Converting the debtors' personal property to its own use.

The first was lawful and proper (provided there was no breach of the peace), the second was actionable for any actual and punitive damages. The fact that movant had a judgment against debtors for $69,661.61 gave it the right to have an execution issued, a levy made, a sale conducted by the Sheriff, the proceeds ordered delivered to it, and nothing further. The Court cannot believe that the movant was deliberately converting debtors' property and, therefore, holds that it was proceeding with its Uniform Commercial Code rights of repossession and self-help when it picked up and sold the personalty. Thus movant was proceeding under the Uniform Commercial Code and outside the judgment. The mere existence of the judgment did not cloak movant with bullet proof armor in dealing with debtors' property nor did it justify any and every action of movant. It only entitled movant to bring into play the assistance of the law in transferring possession and title from debtors to movant or other purchasers at a properly conducted sheriff's sale. Once movant foreswore the help of said force, it was on its own and can receive no legal comfort from the judgment entry.

The second problem with movant's argument is that the "no notice—no deficiency" rule appears to mean just what it says. If there has been no notice, then the lender/seller can recover no deficiency. Because most of the cases have arisen prior to judgment, it is easy to think of it as "no notice—no deficiency judgment", rather than its true meaning of no recovery. In the previously cited quote from the Eighth Circuit, the true rule is stated, i.e., "preclude any recovery" (*Chemical Sales*, supra). Therefore, it matters not whether the creditor is in judgment or not, or holds liens on additional property or not. Once the creditor takes self help possession of personal property and sells it without notice, it is precluded from any further recovery of the debt secured by the personal property which it disposed of in a commercially unreasonable manner. It follows then if there can be no further recovery, movant has no claim to pursue and, therefore, cannot proceed with its fraudulent conveyance action in state court.

The Motion of the Boatmen's Bank of Lockwood to Lift the Stay is OVERRULED. The foregoing shall constitute Findings of Fact and Conclusion of Law as required under Rule 7052, Rules of Bankruptcy.