**CHERRY MANOR, INC.,**
**Plaintiff–Respondent,**

v.

**AMERICAN HEALTH CARE, INC., and**
**American Capital Management**
**Services, Inc., Defendants–Appellants.**

Nos. 16644, 16660.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 1990.

Motion for Rehearing or Transfer
Denied Oct. 11, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Harold F. Glass, Randy R. Cowherd, Schroff, Glass & Newberry, Springfield, for defendants-appellants.

William G. Todd, W. Craig Hosmer, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for plaintiff-respondent.

SHRUM, Judge.

This is an action by Cherry Manor, Inc. (hereafter "Cherry Manor"), against American Health Care, Inc. (hereafter "American Health"), and American Capital Management Services, Inc. (hereafter American Capital), seeking a deficiency judgment on a purchase money promissory note. American Health and American Capital filed counterclaims against Cherry Manor seeking: (a) damages for conversion of personal property (Count I); (b) damages pursuant to § 400.9–507 [Uniform Commercial Code–Secured Transactions][1] for violations of § 400.9–504(3)[2] and § 400.9–507(1)[3] (Count II); (c) punitive damages for intentional, willful and wanton conduct in depriving them of their personal property (Count III); and (d) actual and punitive damages for alleged misrepresentations by Cherry Manor in its financial statements to induce American Health to purchase the nursing home real estate and personal property (Count IV). The case was tried non-jury. The appeal is by American Health and American Capital from a judgment for Cherry Manor for $194,957.25 on Cherry Manor's suit on the promissory note. American Health and American Capital also appeal the judgment denying relief on all counts of their counterclaim. The judgment for Cherry Manor for the note deficiency is reversed. The judgment for Cherry Manor on the counterclaims is affirmed.

In June 1985, Cherry Manor sold a nursing home business to American Health for $710,000.00. Included in the sale was real estate and personal property connected with the nursing home business.[4] American Health paid $60,000.00 cash as down payment and gave Cherry Manor a single promissory note for $650,000.00 for the balance of the purchase price. The note was secured by a deed of trust on the real property and a security agreement covering the personal property, inventory and fixtures.[5] American Capital signed the note as guarantor. Monthly payments, as provided in the note, were paid through June 1, 1986, but no payments were made on the note by anyone after June 1, 1986. The principal balance due on the note was $650,000.00 when default occurred. Cherry Manor accelerated payments under the note and instituted nonjudicial foreclosure proceedings on the real estate by giving notice of trustee's sale. Notice of the real estate foreclosure sale was sent to American Health via certified mail. The president of American Health received the trustee's notice of the real estate foreclosure sale and he attended the sale on the scheduled date of October 28, 1986. At the foreclosure sale, no mention was made that personal property was being sold. The attorney handling the foreclosure sale for Cherry Manor testified that the deed of trust foreclosure sale did not cover, in any

---

**1.** Section 400.9–507(1) provides, in part: "If the disposition [of the personal property collateral] has occurred the debtor or any person entitled to notification ... has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part."

**2.** Section 400.9–504(3) reads, in part: "Disposition of the collateral [by a secured party after default] may be by public or private proceedings.... [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor...."

**3.** Section 400.9–506 provides for the debtor's right to redeem collateral.

**4.** By contract, the $710,000.00 price was allocated as follows: $565,000.00, real estate; $140,000.00, personal property; and $5,000.00, goodwill.

**5.** A financing statement detailing item by item the myriad of personal property involved was prepared and signed at the time of the sale.

sense, the personal property. The real estate was sold to Cherry Manor for $400,000.00. Attorney fees of $4,000.00 were charged leaving $396,000.00 from the real estate foreclosure sale which was credited to the unpaid balance on the note. Interest due as of October 28, 1986, was $27,092.71. In early December 1986, American Health, after threat of wrongful detainer action and by virtue of negotiations, returned possession of the nursing home real estate and its contents to Cherry Manor.[6] Subsequently, in July 1987, Cherry Manor sold the nursing home real estate and personal property to Mr. and Mrs. Simmons for $500,000.00.

When the real estate and personal property were re-sold in July 1987, no allocation was made in the purchase price between the real estate and personal property. Cherry Manor never sent written notice to American Health or American Capital of the time and place of any public sale of the nursing home personal property. Cherry Manor never sent written notice to American Health or American Capital of the time after which private sale or other intended disposition was to be made of the nursing home personal property. The president of American Health and American Capital valued the nursing home personal property at $150,000.00 at the time Cherry Manor took it back. Cherry Manor offered evidence that after giving credit for the net real estate foreclosure price of $396,000.00, giving $140,000.00 credit for the nursing home personal property, and adding back to the note interest and $13,831.25 in attorney fees incurred in connection with the note collection, the balance due on the note was $194,957.25. The trial court utilized that evidence to enter its note deficiency judgment in favor of Cherry Manor for $194,957.25. In its conclusions of law, the trial

court determined that the "deficiency should be reduced by the agreed value of the personal property One Hundred Forty Thousand ($140,000) Dollars," and that "[p]laintiff should not be barred from its deficiency action entirely merely because of lack of notice of the subsequent sale of the combined assets."

◼ The sole point briefed on appeal by American Health and American Capital is a claim of trial court error in entering a deficiency judgment in favor of Cherry Manor when it failed to give American Health and American Capital notice of the sale or intended disposition of the nursing home personal property. Beginning with *Gateway Aviation, Inc. v. Cessna Aircraft,* 577 S.W.2d 860, 862–63 (Mo.App. 1978), and consistently thereafter, Missouri appellate courts have held that before a secured party can obtain a deficiency against a debtor, the debtor must be given notice of what is about to occur; i.e., a notice that a sale of the personal property collateral is going to be held as required by the Uniform Commercial Code and particularly § 400.9–504(3).[7] The failure to receive notice prevents a deficiency judgment. *Boatmen's Bank of Nevada v. Dahmer,* 716 S.W.2d 876, 877 (Mo.App.1986); *Modern Auto Co., Inc. v. Bell,* 678 S.W.2d 443 (Mo.App.1984); *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106, 108 (Mo.App.1981); *Anheuser v. Oswald Refractories Co., Inc.,* 541 S.W.2d 706, 711 (Mo.App.1976). *See generally* Annotation, *Uniform Commercial Code: Failure of Secured Creditor to Give Required Notice of Disposition of Collateral as Bar to Deficiency Judgment,* 59 A.L. R.3d 401 (1974). The Federal Courts have recognized Missouri's adherence to the "No Notice—No Deficiency" rule, *Executive Fi-*

---

6. Testimony from the president of Cherry Manor was that at the time of repossession, there were no patients, the nursing home was in a state of disarray, much of the personal property that had been mortgaged was missing, and the home was "filthy."

7. The court recognizes that there are other approaches which have been taken in many states; namely, that failure of a creditor to follow the statutory requirements of U.C.C. provisions sim-

ilar to § 400.9–504(3) creates a rebuttable presumption that the value which should have been received by the disposition of the collateral equals the balance due on the outstanding debt—a presumption that there is nothing owing the creditor. The appellate courts of this state have not followed that view, but rather have followed the "No Notice—No Deficiency" rule.

*nancial Services v. Garrison,* 722 F.2d 417, 418 (8th Cir.1983), and that "[i]t is settled law in Missouri that a creditor's failure to give notice of the sale of collateral precludes a deficiency judgment." *Chemical Sales Co., Inc. v. Diamond Chemical Co.,* 766 F.2d 364, 369 (8th Cir. 1985). "The right to a deficiency judgment accrues only when there is strict compliance with statutory requirements." *Chrysler Capital Corp. v. Cotlar,* 762 S.W.2d 859, 861 (Mo.App.1989); *First Missouri Bank & Trust Co. v. Newman,* 680 S.W.2d 767, 770 (Mo.App.1984). Any doubt as to whether there has been compliance with the provisions of § 400.9–504(3) are to be resolved in favor of the debtor. *Boatmen's Bank of Nevada v. Dahmer, supra,* at 877; *Modern Auto Co., Inc. v. Bell, supra,* at 444. The notice requirements of § 400.9–504(3) contemplate a written notice in all instances. *Boatmen's Bank of Nevada v. Dahmer, supra,* at 878; *Executive Financial Services v. Garrison,* 418–19. Voluntary surrender of the collateral by the debtor to the creditor does not waive the debtor's right to notice and the statutory notice provision may not be waived or varied. *Boatmen's Bank of Nevada v. Dahmer, supra,* at 877; *Clune Equipment Leasing Corp. v. Spangler, supra,* at 108. To say that a debtor waives his right to notice by voluntarily delivering the collateral to the secured party "would discourage debtors from the cooperative delivery of possession of the collateral and would frustrate the policies of Article Nine in promoting peaceful repossessions and protecting the debtor's rights upon default." *Executive Financial Services v. Garrison, supra,* at 420. "Since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficiency accrues only after strict compliance with the relevant statutes." *Gateway Aviation, Inc. v. Cessna Aircraft, supra,* at 863. A guarantor (such as American Capital) is a debtor within the meaning of § 400.9–504(3) and is, therefore, entitled to notice the same as the maker of the note. Section 400.9–105(1)(d). *Clune Equipment Leasing Corp. v. Spangler, supra,* at 108. The purpose of statu-

tory notice is to apprise the debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. *Chrysler Capital Corp. v. Cotlar, supra,* at 861; *Modern Auto Co., Inc. v. Bell, supra,* at 445. In Missouri, the party seeking the deficiency judgment bears the burden of proving compliance with the § 400.9–504(3) requirement, including the burden of proving the sufficiency of the notice. *Lendal Leasing v. Farmer's Wayside Stores,* 720 S.W.2d 376, 379 (Mo.App.1986); *First Missouri Bank & Trust Co. v. Newman,* 680 S.W.2d 767, 769–70 (Mo.App.1984).

 From the above, it is clear that the law is settled in Missouri that a creditor's failure to give notice of the sale of collateral precludes a deficiency judgment. *U.S. v. Friesz,* 690 F.Supp. 843, 844 (E.D. Mo.1988). Does the fact here that there was only one note secured by both real estate deed of trust and security agreement on personal property mandate a different rule? The question seems to be one of first impression in Missouri. Similar factual situations have been presented to other jurisdictions. Decisions by the courts of other states are not controlling, but are persuasive when the facts are similar. *Triplett v. Shafer,* 300 S.W.2d 528, 530 (Mo. App.1957).

In *Bank of Dover v. Shipley,* 299 Ark. 451, 773 S.W.2d 825 (1989), debtors borrowed money, giving the bank a security agreement on the inventory of a video rental business and a second mortgage on their home. When default occurred, the personal property was surrendered to the bank. Later the bank instituted judicial foreclosure procedures on the real estate. The petition mentioned the personal property covered by the security agreement. The security agreement was attached to the petition. However, the petition did not ask for the sale of the personal property, only the real estate. The court ordered the sale of "the premises" and retained jurisdiction to determine liability in the event of deficiency. The sale was held and a deficiency resulted. The bank then sent a letter to debtor telling them some bids had been

received for personal property and asking them what they wanted to do about it. Receiving no response, the bank sold the personal property and then asked the trial court to enter a deficiency judgment. The trial court ruled the bank was barred from obtaining a deficiency judgment because of failure to comply with the notice requirements of the Arkansas Uniform Commercial Code.[8] On appeal, the Arkansas Supreme Court affirmed, saying that in keeping with earlier decisions, the bank's failure to provide notice to the debtors, prior to sale of the personal property, barred its right to a deficiency judgment. *Bank of Dover v. Shipley, supra,* at 826. *See also Kelly v. Commercial National Bank,* 235 Kan. 45, 50–51, 678 P.2d 620 (1984); *Medling v. Wecoe Credit Union,* 234 Kan. 852, 861–62, 678 P.2d 1115 (1984); *Westgate State Bank v. Clark,* 231 Kan. 81, 90, 642 P.2d 961 (1982).

*In re Boehne,* 82 B.R. 525 (Bkrtcy.W.D. Mo.1988), contained a detailed review of the Missouri "No Notice—No Deficiency" doctrine in order to determine if a stay order should be lifted so that a bank could proceed with litigation pending in the state courts against the debtor. The debtor resisted lifting of the stay order, contending that the bank sold personal property without notice and, thus, in a commercially unreasonable manner; that the sale satisfied the money judgment entered at the time of the replevin order since any deficiency would be the equivalent of a deficiency claim. The bank had discovered some real estate and caused execution to be issued; but before serving the same, the debtor had conveyed the property to relatives without consideration. The debtors argued the stay order should not be lifted because if there was no deficiency balance, there could be no pursuit of the real estate on any theory. The court refused to lift the stay order, saying that by Missouri's "No Notice—No Deficiency" rule if a creditor holds two simultaneous liens, one on per-

sonal property and one on real estate, and the creditor forecloses on the personal property first without giving notice of sale, such creditor looses the ability to foreclose on the real estate that was also subject to the lien. *Id.* at 528–29.

■ Given the sequence of events which here occurred, this court holds that the existence of additional security in the form of a deed of trust does not alter the "No Notice—No Deficiency" rule. The deed of trust was foreclosed in accordance with nonjudicial court procedures and with the terms of the deed of trust. This left Cherry Manor with the same promissory note with an unpaid balance secured by the personal property security. Following the well settled "No Notice—No Deficiency" doctrine enunciated by the Missouri courts, Cherry Manor waived its right to any deficiency when it did not give the required written notice under § 400.9–504(3) to American Health and American Capital. Always mindful that the trial court's judgment should not be disturbed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law, *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Grunden v. Nelson,* 793 S.W.2d 569 (Mo.App.1990), this court finds the trial court here erroneously declared the law and erroneously applied the law in entering a deficiency judgment for Cherry Manor against American Health and American Capital.

■ The appeal by American Health and American Capital of the trial court's judgment denying them relief on their four-count counterclaim was styled Appeal No. 16660–2. Separate appeal was taken from that order then from the judgment on Cherry Manor's claim for note deficiency because the initial trial court judgment failed to rule on the counterclaims. A subsequent amended judgment denied the re-

---

**8.** Ark.Code Ann. Sect. 4–9–504(3), in pertinent part, read identical to Sect. 400.9–504(3), to wit: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable*

*notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor ...."*

lief, denied the counterclaims, and prompted the second appeal by American Health and American Capital. The appeals were consolidated but no brief was filed by American Health or American Capital as to their counterclaims. The appeal by American Health and American Capital in No. 16660–2 (their counterclaims) is deemed abandoned. Rule 84.04(j); *Estate of Huskey v. Monroe*, 674 S.W.2d 205, 208 (Mo. App.1984); *Henderson v. Smith*, 643 S.W.2d 882, 883 (Mo.App.1982). That appeal is dismissed.

For the reasons stated, the judgment for note deficiency in favor of Cherry Manor is reversed with directions to enter a verdict in favor of American Health and American Capital. The appeal in Case No. 16660–2 is dismissed.

FLANIGAN, C.J., and HOGAN, J., concur.