**VICTORY HILLS LIMITED PARTNERSHIP I, et al., Appellants,**

**v.**

**NATIONSBANK, N.A. (MIDWEST), Respondent.**

**No. WD 57483.**

Missouri Court of Appeals, Western District.

Aug. 1, 2000.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 2000.

Application for Transfer Denied Oct. 31, 2000.

Don A. Peterson, Kansas City, for appellants.

Irvin V. Belzer, Daniel R. Young, Kansas City, for respondent.

Before: BRECKENRIDGE, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Judith B. Brougham (JBB), Thomas L. Brougham (TLB), and Victory Hills Limited Partnership I (VHLP) appeal the circuit court's summary judgment for the respondent, NationsBank, N.A., on their "Petition for Damages," wherein they claimed that they were entitled to damages of $279,458.31, the amount they paid to the respondent in payment of the remaining balance due on a note held by the respondent, after it had previously sold a portion of the collateral for the note, without giving them notice of the sale, as the appellants contend was required by § 400.9–504(3).[1] As to their claim for damages, the appellants alleged in their petition, *inter alia*, that the respondent's failure to give them notice of the partial sale of collateral securing the note, the proceeds from which were credited against the debt on the note, extinguished the debt, barring the respondent from not only seeking a deficiency judgment, but from disposing of any additional collateral to satisfy the debt, prior to seeking a deficiency judgment.

The appellants raise two points on appeal. In Point I, they claim that the trial court erred in sustaining the respondent's motion for summary judgment based on the court's conclusion that, under the undisputed facts, Article 3 of the Uniform Commercial Code (the UCC) applied to the exclusion of Article 9 such that the respondent was not required to give to the appellants notice, in accordance with § 400.9–504(3), as to the respondent's partial sale of collateral. In Point II, assuming that we find in Point I that Article 9 did apply, such that the respondent was required to give the appellants notice of its partial sale of collateral securing the note, they claim that the trial court erred in sustaining the respondent's motion for summary judgment because it was not en-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

titled to judgment as a matter of law, in that, under the undisputed facts, the remaining balance due on the note, after receiving credit for the proceeds of the respondent's partial sale of collateral, was a "deficiency," which invoked the "no notice-no deficiency" rule, a judicially crafted rule that grew out of the notice requirement of § 400.9–504(3), so as to have barred the respondent from collecting the debt on the note.

We affirm.

### *Facts*

At the relevant times in question, appellant JBB and her deceased husband, Leo T. Brougham, were partners with appellant TLB in appellant VHLP, which owned the Victory Hills Townhomes Development (the VHT Development). JBB, JBB's husband, and TLB were also shareholders of Parkway, Inc., which owned the Victory Hills Golf Course (the golf course), located in Wyandotte County, Kansas. The respondent, NationsBank, N.A. (Midwest), as the successor by merger of Boatmen's First National Bank of Kansas City, N.A. (BFNB), became the holder of several notes related to the separate sales of the golf course and the VHT Development, out of which this dispute between the parties arises.

### *Sale of Golf Course*

The respondent was the holder of two promissory notes originally made by Parkway to Merchants Bank, one for $500,000, dated November 1, 1983 (Parkway Note 1); and one for $600,000, dated January 8, 1990 (Parkway Note 2). These notes were secured by a first and second mortgage against the golf course, as well as a security interest in the personal property used in its operation, and were personally guaranteed by JBB and TLB.

Although not explained in the record, at some point, BFNB apparently became the holder of the Parkway notes. In any event, it is undisputed that in March 1994, Parkway sold the golf course to Victory Hills Golf Course, Inc. (VHGC), pursuant to the "Assumption, Extension and Modification Agreement," dated March 25, 1994, entered into between Parkway, VHGC, and BFNB, as the holder of the notes. Pursuant to the agreement, the Parkway notes were amended and restated in the amount of their then current balances due: Parkway Note 1, $391,504.01; and Parkway Note 2, $557,781.35. As amended and restated, Parkway and VHGC were liable to BFNB on the notes, which continued to be secured by the first and second mortgages on the golf course and a lien on the golf course personal property. However, JBB and TLB were no longer personally liable on the notes.

For its equity in the golf course, Parkway received from VHGC a carry-back note (the VHGC note) for $391,500, which was secured by a third mortgage on the golf course and a security interest in the golf course personal property. In addition to the mortgages to BFNB, securing the Parkway notes, and mortgage securing the VHGC note, a fourth mortgage was placed on the golf course to secure a $300,000 loan from BFNB to VHGC.

### *Sale of VHT Development*

On the same date the golf course was sold, BFNB and the appellants entered into an agreement whereby BFNB agreed to consent to a proposed sale and conveyance of the VHT Development to Leisure Centers Development Corporation. The consent of BFNB was necessary in that it was the holder of the housing revenue bonds that were issued by the City of Kansas City, Kansas, to Merchants Bank to fund the development and the payment of which was secured by the same. The bond indebtedness was also secured by the Westport Apartments and personal property consisting of two certificates of deposit and two notes from Brougham Estates, Ltd., which owned the Brougham Estates apartment complex. One of the notes was payable to JBB and her husband, and the

other was payable to Brougham Construction owned by JBB's husband. JBB, JBB's husband, and TLB also personally guaranteed the bonds.

The sale of the development was completed on August 12, 1994, pursuant to the "Settlement and Modification Agreement" entered into between the appellants, Parkway and BFNB. After crediting the proceeds from the sale, the cash received from the two certificates of deposit that had been pledged to secure the payment of the bonds, and the cash received from VHLP, the outstanding balance on the bond indebtedness was determined to be $775,000, which was paid by the appellants by giving their promissory note in that amount to BFNB (the VHLP note).

The security for the VHLP note included the original security for the bond indebtedness. However, pursuant to the security agreement for the VHGC note, the VHLP note was also to be secured by the VHGC note. In this respect, the VHGC note security agreement provided, in pertinent part, that "[t]o induce the Bank [BFNB] to enter into the Modification, Parkway has agreed to pledge and grant a security interest in the VHGC Note and the security therefor. . . ." The security interest was described in the agreement as follows:

2. *Delivery of Note.* Concurrently herewith, Parkway is delivering to Bank the VHGC Note and has duly assigned or endorsed such note to Bank.

3. *Security Interest.* Parkway hereby pledges and grants to Bank a security interest in (i) the VHGC Note and the proceeds thereof, and (ii) the VHGC Loan Documents, as additional security for the Loans and the obligations (as amended from time to time) of Victory Hills Limited Partnership I and others to Bank in connection with the City of Kansas City, Kansas Multifamily Housing Revenue Bonds, Series 1985 (Victory Hills Apartment Project).

4. *Assignment of Mortgage.* By Assignment of Mortgage of even date herewith, Parkway has assigned to Bank the VHGC Mortgage and such Assignment of Mortgage shall be recorded in the real property records of Wyandotte County, Kansas.

In delivering the note to BFNB, Parkway executed an allonge that was attached to the note and stated, "Pay to the Order of Boatmen's First National Bank of Kansas City." Although Parkway was not a maker on the VHLP note, pursuant to a cross-default provision in the parties' modification agreement, Parkway agreed that any default in payment of the Parkway notes or the VHGC note would constitute a default under the VHLP note. As additional security for the VHLP note, JBB pledged her partnership interest in Brougham Estates, Ltd., and her right to receive the first $30,000 of its annual net cash flow.

### Sale of VHGC Note

On October 21, 1996, counsel for BFNB sent a certified letter to Parkway and VHGC, entitled *"Notice of Default/Demand/Acceleration,"* advising that the Parkway notes, along with the third note secured by the golf course, were in default and if such default was not cured by 5:00 p.m. on October 30, 1996, the entire balances then due on the notes would be declared due and owing. The notice also advised that the failure to cure would result in BFNB taking whatever legal action was available and necessary to collect the entire indebtedness due under the loan agreements. The notes were in default as a result of a failure to make required principal and interest payments and to keep real estate taxes current on the golf course.

In order to avoid any legal action by the bank to collect the notes, including foreclosure by it on the golf course, VHGC sought to refinance. However, during this time, on February 27, 1997, the bank sold the three notes secured by the golf course and the VHGC note to Citizens Bank &

Trust Company of Chillicothe, Missouri (Citizens), the bank to which VHGC had changed its banking business in February 1997. Prior to consummating the sale, the bank had received an incorrect payoff figure, as of January 21, 1997, on the VHGC note from Parkway's attorney of $405,-143.22, when the correct figure should have been $436,655.97. The four notes were sold for a total of $1,709,243.65. The $405,715.60 [2] received by the bank for sale of the VHGC note was credited against the balance due on the VHLP note, on which, unlike the golf course notes, the appellants were then current as to their payments. The appellants disputed in the trial court below whether the bank knew the correct payoff figure on the VHGC note before the sale was consummated. They also disputed whether, prior to the final sale of the notes, they had notice of the form of the sale agreement or its terms.

After the sale of the VHGC note to Citizens, the appellants refused to make further payments due on the VHLP note, contending that the failure of the bank to send them notice, in accordance with § 400.9–504(3), of the sale of the VHGC note "barred" the bank from seeking to collect the remaining balance due on the VHLP note, invoking what our appellate courts have recognized, in interpreting the effect of § 400.9–504, as the "no notice-no deficiency" rule. The respondent bank rejected the application of this rule and insisted on payment as required under the VHLP note, advising the appellants that if they continued to refuse to make payments due under the note, it would be forced to take legal action against them, including foreclosing on the apartment complex securing the note. In response, in the summer of 1997, the appellants paid off, "under protest," the balance due on the VHLP note, $279,458.31.

On October 6, 1997, the appellants filed their "Petition for Damages," seeking, in pertinent part:

(a) the Court's declaration that [respondent] was barred from taking any action to collect the balance due on the $775,000.00 Promissory Note because of [respondent's] failure to first send the requisite written notice to [appellants] as required by Section 400.9–504 R.S.Mo.;

(b) for the sum of $279,458.31 together with interest at the note default rate or the highest rate permitted by law from the respective dates wrongful payment was demanded and made by [appellants] to [respondent]. . . .

In seeking such recovery, the appellants relied on their allegation that notice to them from the respondent of the sale of the VHGC note was required under § 400.9–504(3), which was not given, and that as such, under the "no notice-no deficiency" rule, the respondent was barred from seeking the balance of the payments due under the VHLP note. The respondent answered the petition, alleging, *inter alia*, that the rule had no application. Motions for summary judgment were filed subsequently by both sides. On June 9, 1999, the trial court sustained the respondent's motion and necessarily denied the appellants'.

This appeal follows.

### *Standard of Review*

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

---

**2.** The record does not reflect why the amount received by the bank, $405,715.60, was great-

er than the incorrect payoff figure of $405,-143.22.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citation omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

## I.

■ Before addressing the merits of the appellants' claims, we would first note that we are to affirm the trial court's grant of summary judgment for the respondent if the same is correct under any theory supported by the record developed below and presented on appeal. *Thomas Berkeley Consulting Eng'r, Inc. v. Zerman*, 911 S.W.2d 692, 696 (Mo.App.1995) (*citing Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243 (Mo. *banc* 1984)). In this respect, the record reflects that the trial court sustained the respondent's motion for summary judgment on four separate grounds, one of which was that the "no notice-no deficiency" rule, relied upon by the appellants to recover on their claim for damages, did not apply because it can only be used to defeat a deficiency judgment sought by a creditor, not to extinguish a debt and bar a creditor from disposing of remaining collateral to satisfy the debt secured thereby where a deficiency judgment is not sought. Without deciding whether the trial court was correct in granting summary judgment on the other grounds found, because we find, for the reasons discussed, *infra*, that the trial court was correct in granting summary

judgment to the respondent on this ground, we discuss it alone. *Id.* In doing so, we necessarily must discuss issues raised in both Points I and II of the appellants' brief.

In their petition below, the appellants sought damages equal to the amount of the payoff on the VHLP note, after being given credit for the proceeds from the sale of the VHGC note securing the VHLP note. In seeking such damages, they alleged generally in their petition that because the respondent was required to give notice to them of the sale of the note, in accordance with § 400.9–504(3), but failed to do so, the debt as to the note was extinguished, barring the respondent from collecting the remaining balance due on the note, which included not only barring it from seeking a deficiency judgment, but disposing of the remaining collateral prior to seeking such a judgment. From this, they then alleged, in pertinent part:

12. Although fully aware that no balance was lawfully due, the Defendant has engaged in a course of action in demanding payment of such deficiency balance from Plaintiffs by threat of collection action.

13. Under duress of threatened collection action by Defendant and protest, the Plaintiffs have made payment of the $25,413.95 June quarterly payment allegedly due on May 30, 1997 and the $250,026.27 of principal and $4,018.09 of interest allegedly due as of August 12, 1997 which monies Defendant has refused to return and instead has *converted* such funds to its own use and benefit.

14. Without payment as aforesaid, Defendant had threatened collection action, refused to return of [sic] the original $775,000.00 Promissory Note marked paid in full or otherwise marked as barring collection of deficiency as well as refused to

release and/or return of all remaining collateral securing the $775,000.00 Promissory Note.

(Emphasis added.) Although not expressly denominated as such, it appears that the appellants' recovery was based on some theory of conversion, applying what it now denominates on appeal as the "no notice-no deficiency" rule. In this respect, they alleged that the failure to give notice in accordance with § 400.9–504(3) not only worked to deny a creditor a deficiency judgment against the debtor after the collateral has been exhausted, but also to block a creditor from disposing of any of the remaining collateral, even if done in accordance with § 400.9–504 and no deficiency *judgment* is being sought. From this, they alleged that because the respondent, here, failed to give the requisite notice of § 400.9–504(3) in selling the VHGC note, the respondent was not entitled to collect on the remaining balance due on the VHLP note, a fact of which it was aware, such that its receipt of and refusal to return the appellants' payment, "under protest," of the remaining balance due on the VHLP note amounted to conversion.

Rather than file an action for damages for conversion, the appellants could have brought an action, under § 400.9–507(1), for the respondent's alleged failure to comply with the notice requirement of § 400.9–504(3). Section 400.9–507(1), dealing with a secured party's liability for failure to comply with the notice provision of § 400.9–504(3), provides, in pertinent part:

> If it is established that the secured party is not proceeding in accordance with the provisions of this part [Part 5, including § 400.9–504] disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition

has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.

Although this section, by its terms, would not bar the respondent from disposing of the remaining collateral for failure to give the § 400.9–504(3) notice as to the sale of the VHGC note, as the appellants alleged in their suit below, under this section, the appellants were free to bring suit against the respondent to recover the loss they incurred by the sale of the note without notice. The amount of such a loss, according to the appellants, would have been $30,940.37, the difference between the payoff amount of the VHGC note of $436,655.97 and its sale price to Citizens of $405,715.60. Rather than bringing an action pursuant to § 400.9–507, however, the appellants chose to go on the offensive in an apparent attempt to do better than the $30,940.37 by wiping out the entire remaining balance due on the VHLP note of $279,458.31, despite the fact that there remained collateral to satisfy the same, in whole or part, such that it was impossible to predict whether the respondent would, if ever, be forced to bring an action against the appellants on the note for a deficiency judgment. For this reason, the issue we must determine is whether the trial court was correct in granting summary judgment to the respondent because the "no notice-no deficiency" rule did not apply to extinguish the appellants' debt on the VHLP note so as to entitle them to damages for their payment in satisfaction of the same.

■ Under Rule 74.04,[3] to be entitled to summary judgment, the respondent, as the movant, was required to show that: (1) there was no genuine dispute as to the material facts on which they relied for summary judgment; and (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380;

---

**3.** All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise

indicated.

*Rhodelander v. Liberty Christian Fellowship,* 6 S.W.3d 402, 405 (Mo.App.1999). If the movant for summary judgment is a defending party, as in this case, a *prima facie* case for summary judgment may be established by one or more of the following means: (1) showing undisputed facts that negate any one of the claimants' required proof elements; (2) showing that the claimants, after an adequate period of discovery, have not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimants' required proof elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by the movant. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.*

■ As discussed, *supra,* to succeed on their claim for damages, the appellants were required to show that the "no notice-no deficiency" rule applied such that the failure of the respondent, in selling the VHGC note, to give notice to the appellants in accordance with § 400.9–504(3), extinguished the remaining balance due on the VHLP note and barred the respondent from taking possession of and disposing of the remaining collateral. Accordingly, in its motion for summary judgment, the respondent, employing the second means for making a *prima facie* case for summary judgment, alleged, *inter alia,* that the appellants, under the undisputed facts, could not show that the rule applied, entitling it to judgment as a matter of law, in support of which it alleged four grounds: (1) Article 3 of the UCC applied to the exclusion of Article 9 such that, under the allonge attached to the VHGC note, it was a "holder" thereof such that it could be negotiated without giving notice to the appellants in

accordance with § 400.9–504(3); (2) the rule only applied to post-default sales of collateral and the VHLP note was not in default; (3) by its own terms, the UCC does not apply to real estate transactions, such that the notice requirement of § 400.9–504(3) and the rule could not be employed to void its rights in the remaining collateral consisting, in part, of valid real estate liens; and (4) the rule only applied to defeat a deficiency judgment sought by the creditor and no such judgment was being sought by the respondent. As discussed, *supra,* although the trial court sustained the respondent's motion for summary judgment on all four grounds, it is only necessary for us to address the last one in determining this appeal.

■ Under § 400.9–504(1), a "secured party after default may sell, lease or otherwise dispose of any or all of the collateral," with the proceeds therefrom to be applied according to the statute, including the satisfaction of the "security interest under which the disposition is made." If the application of the proceeds results in a "surplus," then the secured party must account to the debtor for the same. § 400.9–504(2). However, the debtor is liable to the secured party if a "deficiency" results. *Id.* The disposition of collateral must be done in accordance with § 400.9–504. In this respect, § 400.9–504(3) provides, in pertinent part:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after*

*which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. If he has not signed after default a statement renouncing or modifying his right to notification of sale, but no such statement shall be effective in the case of consumer goods [sic]. In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.*

(Emphasis added.) The general purpose of the notice provision of § 400.9–504(3) is to apprise a debtor of the details of a sale of collateral so that he or she may take whatever action is necessary to protect his or her interest therein. *McKesson Corp. v. Colman's Grant Village, Inc.,* 938 S.W.2d 631, 633 (Mo.App.1997); *Commerce Bank of St. Louis, N.A. v. Dooling,* 875 S.W.2d 943, 946 (Mo.App.1994).

 As to the failure to give the required notice of § 400.9–504(3), the Eastern District of this court in *Gateway Aviation, Inc. v. Cessna Aircraft Co.,* 577 S.W.2d 860 (Mo.App.1978), appears to have been the first appellate court of this state to recognize what has come to be known as the "no notice-no deficiency" rule, the applicability of which is the deciding issue in this case. *Id.* at 863. The court there stated the rule as:

For the reason that defendant did not give the required notice to plaintiffs under § 400.9–504(3) we hold that defendant waived its right to any deficiency. Since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficien-

cy accrues only after strict compliance with the relevant statutes.

*Id.* Stated another way, "[a] secured party's failure to give reasonable notice of the sale of collateral as mandated by [§ 400.9–504(3) ] precludes that party from obtaining a deficiency judgment." *McKesson Corp.,* 938 S.W.2d at 633. Thus, in a deficiency judgment action, the creditor is required to plead and prove that he or she has complied with the notice provision of § 400.9–504(3). *Textron Fin. Corp. v. Trailiner Corp.,* 965 S.W.2d 426, 429 (Mo. App.1998).

As pointed out by the Eastern District of this court in *McKesson Corp.,* the rule has now been followed in all three districts of the Missouri Court of Appeals. *McKesson Corp.,* 938 S.W.2d at 633 n. 1 (*citing* Eastern District: *First Missouri Bank & Trust Co. v. Newman,* 680 S.W.2d 767, 770 (Mo.App.1984); *Modern Auto Co. v. Bell,* 678 S.W.2d 443, 444 (Mo.App.1984); *Ford Motor Credit Co. v. Freihaut,* 871 S.W.2d 129, 130–31 (Mo.App.1994); *Commerce Bank of St. Louis, N.A. v. Dooling,* 875 S.W.2d 943, 946 (Mo.App.1994); Western District: *Boatmen's Bank v. Dahmer,* 716 S.W.2d 876, 877 (Mo.App.1986); *Sedalia Mercantile Bank & Trust Co. v. Loges Farms, Inc.,* 740 S.W.2d 188, 195 (Mo.App. 1987); Southern District: *Clune Equip. Leasing Corp. v. Spangler,* 615 S.W.2d 106, 108 (Mo.App.1981); *Cherry Manor, Inc. v. American Health Care, Inc.,* 797 S.W.2d 817, 820–21 (Mo.App.1990); *Boatmen's Bank v. Brooks,* 869 S.W.2d 781, 783 (Mo. App.1994); *RWR, Inc. v. DFT Trucking, Inc.,* 899 S.W.2d 875, 878 (Mo.App.1995)). Although, as noted by the Eastern District in *McKesson Corp.,* the rule was followed by the Western District in *Sedalia Mercantile Bank & Trust Co. v. Loges Farms, Inc.,* 740 S.W.2d 188, 195 (Mo.App.1987) and *Boatmen's Bank v. Dahmer,* 716 S.W.2d 876, 877 (Mo.App.1986), thereafter, this court, in *dicta,* in *Commercial Credit Equipment Corp. v. Parsons,* 820 S.W.2d 315 (Mo.App.1991), was highly critical of the rule and indicated that the "fairest"

rule in dealing with the failure to give the § 400.9–504(3) notice was the "rebuttable presumption" rule. *Id.* at 324.[4] In criticizing the rule, this court recognized that there are three rules that have been applied by various jurisdictions to deal with the failure of a secured party to give notice as required by § 400.9–504(3): (1) the "absolute bar" rule, a.k.a. the "no notice-no deficiency" rule; (2) the "rebuttable presumption" rule; and (3) the "set-off" rule. *Id.* We believe that a brief discussion comparing these rules is beneficial to our discussion and disposition of the issue presented.

Unlike the "no notice-no deficiency" rule, which acts as a complete bar to the recovery of a deficiency judgment, the rebuttable presumption rule, like the set-off rule, would allow a deficiency judgment, but would credit against the judgment the amount that would reasonably have been obtained by the secured party for the collateral if it had been sold in conformity with the law. *Id.* This is essentially one of the remedies provided for in § 400.9–507. The difference between the "rebuttable presumption" rule and the "set-off" rule is that the former places the burden on the *creditor* to show that the sale was conducted in accordance with applicable law, as it is in the "no notice-no deficiency" rule; whereas, the latter places the burden on the *debtor*. *Id.* In comparing the "rebuttable presumption" rule with the set-off rule, this court stated:

> The rebuttable presumption rule indulges the presumption in the first instance that the collateral is worth at least the

amount of the debt. It thereby shifts to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law. This rule is considered by the majority of courts to be the fairest and has their concurrence. *Bank of Chapmanville v. Workman,* 406 S.E.2d at 64; *Henry v. Trickey,* 9 Ark. App. 47, 653 S.W.2d 138 (1983); *Farmers State Bank v. Thompson,* 372 N.W.2d 862 (N.D.1985); *Wang v. Wang,* 440 N.W.2d 740 (S.D.1989). It is the rationale adopted by this court in *Wirth v. Heavey,* 508 S.W.2d at 268.

*Id.* at 324.

In comparing the "absolute bar" or "no notice-no deficiency" rule with the rebuttable presumption rule, this court noted in *Commercial Credit Equipment Corp.* that the "UCC, however, does not mention the denial of a deficiency judgment among those remedies that § 400.9–507 codifies in favor of the debtor." *Id.* As such, the court in *Commercial Credit Equipment Corp.* opined that the "rebuttable presumption" rule was more in keeping with § 400.9–507 because the rule, like the statute, recognized that due to the creditor's failure to give notice, as required, the debtor should be credited for or should be allowed to recover the difference between the amount for which the collateral sold and the amount for which it should reasonably have sold, if the sale had been conducted in accordance with § 400.9–504(3). In comparing further the two rules, the *Commercial Credit Equipment Corp.* court opined that the "absolute bar" or "no no-

---

4. Although the Eastern District in *McKesson Corp.*, in upholding the complete bar of the "no notice-no deficiency" rule and rejecting the appellants' argument that the deficiency judgment should be " 'set-off of damages against the deficiency balance on the notes' under the damage provision of § 400.9–507(1)," cited this court's rejection of the "set-off" rule in *Commercial Credit Equipment Corp., McKesson Corp.*, 938 S.W.2d at 634, it failed to recognize that this court did not reject the concept of a "set-off" against the deficiency judgment, but rejected the "set-off"

rule, because it would unfairly place the burden on the debtor to show that he or she was damaged by the failure of the secured party to comply with the applicable law in selling the collateral. *Commercial Credit Equip. Corp.*, 820 S.W.2d at 324. In fact, as we note, *supra*, in our discussion, this court spoke in favor of adopting the "rebuttable presumption" rule such that a credit or "set-off" would be allowed against the deficiency judgment sought by the creditor, as the appellants sought in *McKesson Corp.*

tice-no deficiency" rule does not appear to "subserve the equitable purposes of the Code" in that, depending on the circumstances, the denial of a deficiency judgment under the rule could result in a "windfall" to the debtor. *Id.* This would occur where the difference between what the collateral brought when sold and what it should have brought, if done in accordance with § 400.9–504(3), was small when compared to the deficiency that was forfeited by the creditor under the rule.[5]

Regardless of the criticism that was leveled against the "no notice-no deficiency" rule by the *Commercial Credit Equip. Corp.* court, we need not address its validity inasmuch as it is unnecessary to our disposition of this appeal in that we find that the rule, as adopted by our appellate courts, has no application on the undisputed facts of this case.

In our review of the decisions of the appellate courts of this state that have applied the "no notice-no deficiency" rule, including those cited by the parties, we find none that have applied it to allow a debtor to extinguish a debt where collateral remains to satisfy the debt and the creditor has not filed an action seeking a deficiency judgment, and we see no logic in doing so. The rule has been limited to denying the creditor a deficiency judgment for failure to comply with § 400.9–504(3). In *McKesson Corp.*, the court did approve of applying the rule in a deficiency judgment action where a portion of the collateral was sold in accordance with § 400.9–504(3) and the rest was not. *McKesson Corp.*, 938 S.W.2d at 633. In addition, in *Thong v. My River Home Harbour, Inc.*, 3 S.W.3d 373 (Mo.App.1999), the court recognized that the existence of additional collateral or security did not relieve the creditor from the requirements of that section. *Id.* at 380. Likewise, in *RWR, Inc. v. DFT Trucking, Inc.*, 899 S.W.2d 875

(Mo.App.1995), the court held that where a secured party gave notice of the sale of some items of collateral, but not all collateral, it was precluded from recovering a deficiency judgment. *Id.* at 878–79. However, such applications are not what the appellants are arguing for here.

Logically, there is not a "deficiency," as the term appears in § 400.9–504(2), until the collateral is sold and a balance remains due and owing on the debt, after giving credit against the same for the proceeds of the sale of collateral. *Bank of Houston v. Milam*, 839 S.W.2d 705, 707 (Mo.App. 1992). As such, although a creditor could ignore the collateral and simply sue on the note, *id.*, a "deficiency" judgment would not lie until the collateral is sold, at which time the "no notice-no deficiency" rule could be invoked to deny the creditor such judgment. Here, there is no dispute that after the sale of the collateral in question, the VHGC note, there remained collateral to satisfy the debt secured thereby, the VHLP note. In addition, although it may have been disputed as to whether the VHLP note was in default, it is undisputed that the respondent had not filed suit on the same seeking a deficiency judgment, but had only "threatened" possible legal action. Thus, the "no notice-no deficiency" rule had no application so as to support the appellants' claim for damages on any theory relying on the application of the rule, such that the trial court was correct in granting summary judgment to the respondent.

In holding as we do, we recognize the decision of *In re Boehne*, 82 B.R. 525 (Bankr.W.D.Mo.1988), in which the bankruptcy court appears to have adopted the position of the appellants. However, we are not bound by this decision, *Hanch v. K.F.C. Nat'l Management Corp.*, 615 S.W.2d 28, 33 (Mo. *banc* 1981), and are not persuaded by it. It flies in the face of the authority and logic we have already cited for why the rule should not be applied as

---

5. For example, if the difference was $500 and the remaining balance due on the debt was $50,000, the debtor, assuming no other violative sales of collateral, would be "damaged," under § 400.9–507, in the amount of $500, but, under the rule, would receive a reduction in debt of $49,500.

argued for by the appellants. Further, we note that *Boehne* has never been cited by an appellate court of this state applying the rule as the appellants ask us to do. In addition, we find the respondent's discrediting of *Boehne* in its brief to be persuasive:

> Indeed, in *In re Snead*, 231 B.R. 823 (Bkrtcy.N.D.Ga.1999), a fellow bankruptcy judge did a thorough job of discrediting *Boehne*, explaining that *Boehne's* holding was based, for lack of other authority, on *In re Kennedy*, 785 F.2d 1553, 1555 (11th Cir.1986) and at 806 F.2d 1014, [1]015 (11th Cir.1986), but that *Kennedy* was based upon a certified answer from the Georgia Supreme Court in *U.S. v. Kennedy*, 256 Ga. 345, 348 S.E.2d 636 (1986). What the *Boehne* decision fails to discuss is that the Georgia Supreme Court promptly reconsidered and overruled its answer to the certified question as being contrary to the intent of the Uniform Commercial Code. *Emmons v. Burkett*, 256 Ga. 855, 859, 353 S.E.2d 908, 911 (1987).

We reject the holding in *Boehne*.

For the reasons discussed, *supra*, we find that the respondent made a *prima facie* case for summary judgment. Once a *prima facie* case is made for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). In his or her response, the non-movant is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. If such a showing is not made by the non-movant, judgment is proper for the movant. *Id.* at 381–82. A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.* Here, the appellants, in their response, as to the basis for the trial court's grant of summary judgment, which we discuss, *supra*, relied on the application of the "no notice-no deficiency" rule to defeat the respondent's motion. As such, the trial court did not err in granting summary judgment for the respondent.

Points I and II denied.

## Conclusion

The judgment of the circuit court sustaining the respondent's motion for summary judgment is affirmed.

BRECKENRIDGE, P.J., and LAURA DENVIR STITH, J., concur.